CASE 18.—ACTION BY ELIZABETH BELSER AGAINST THE CITY OF COVINGTON.—December 10, 1909.

## City of Covington v. Belser

Appeal from Kenton Circuit Court (Common Law and Equity Division).

M. L. HARBESON, Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1. Municipal Corporations—Streets—Safety—Measure of Duty. —A city is only bound to keep and maintain its streets in a reasonably safe condition for those exercising ordinary care for their own safety.

2. Municipal Corporations—Defective Streets—Degree of Defectiveness.—Plaintiff, while walking along a brick sidewalk, struck her toe against a brick which projected upward three-quarters of an inch, and slipped on the uneven surface of the walk, and fell, and was injured. Several witnesses testified that the bricks bulged, and that the walk was a "rocky looking affair"; but it was not contended that any of the bricks projected more than three-quarters of an inch. Held, that the walk was reasonably safe, and the city was not negligent in maintaining the conditions disclosed.

JOHN E. SHEPPARD for appellant.

ROBT. C. SIMMONS and CHARLTON B. THOMPSON for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Reversing.

On April 2, 1906, appellee, Elizabeth Belser, fell and broke her kneecap on the sidewalk on the west side of Greenup street, one of the public streets of Covington, Ky. She instituted this action against the city to recover damages for the injury. The jury returned a verdict in her favor for $2,250, and the city of Covington appeals.

While several grounds for reversal are urged, we deem it unnecessary to consider any ground, except the failure of the court to award appellant a peremptory instruction. The accident occurred shortly before 6 o'clock in the morning. It was light at the time, but the sun had not risen. Appellee had gone north over the sidewalk where the accident occurred on her way to a bakery. At the place of the accident there is a small drain, which extends from the property line to the curb. At the time of the accident she was proceeding south, and she fell just as she stepped over the drain. She claims to have stumped her toe on a brick which projected upwards about three-quarters of an inch. When her foot struck the brick, she brought her other foot forward to protect herself, but slipped on the uneven surface of the sidewalk, which was partly covered with a slight frost. Appellee had known the pavement all of her life. She was looking in front of her, and was picking out her way as she proceeded along the sidewalk. There was a grade towards Trevor street, and a slope from the property line to the curb; the fall in the latter case being a little over an inch to the foot. There was testimony to the effect that the sidewalk bulged up and down, with hills and hollows, and that one brick

was standing up where Mrs. Belser fell. Others testified that the bricks bulged, and were rough and uneven. One witness described the sidewalk as an awfully rocky looking affair; another spoke of it as awfully hilly; while a third witness described the sidewalk as having a raise. There is a photograph in the record, which shows some slight elevations and depressions in the sidewalks. There is no evidence that any of the other bricks projected as high as the one against which appellee struck her toe.

The question before us, then, is whether or not the sidewalk at the place of the accident was in a reasonably safe condition for the use of persons in the exercise of ordinary care. The rule upon this subject is well stated in the case of City of Richmond v. Courtney, 32 Grat. (Va.) 792, where the court said: "It is not to be expected, and ought not to be required, that a city should keep its streets at perfect level and even surface. Slight obstructions, produced by loose bricks in the pavement, or by the roots of trees, which may displace the pavement, from the very nature of things, can not be prevented, and so there can not be perfect uniformity of a level surface, where curbstones and culverts are necessary, to be constructed on the streets. In a large city, with many miles of paved streets, it must often happen, from the very nature of the material out of which the pavement is constructed, that the bricks, from the very wear and tear of the use to which they are subjected, will become broken and displaced, so as to cause the fall of a person not careful in walking over them. Certainly, if the obstructions are of such character as those indicated, and which would not cause the fall of a person exercising ordinary care, the city, in such case, could not be held liable." In

the case of Morris v. Philadelphia, 195 Pa. 372, 45
Atl. 1068, the court said: "The plaintiff, Mrs. Morris,
trod upon a brick in a small depression in the pave-
ment, and it turned under the pressure of her foot
sufficiently to cause her to fall. There was no evi-
dence to show that the brick was out of its position
then or any time before; but it had become slightly
loosened, a circumstance which may easily happen at
any time in any part of the city. To hold the city
liable in damages for every trivial accident of this
kind would be to adopt a measure of liability quite
unheard of, and entirely too severe for the ordinary
administration of municipal affairs. The possibility
of an occasional injury under such circumstances is
one of the inconveniences of residents in large and
populous cities, to which the citizens must submit."

While in the case before us several witnesses tes-
tified to the fact that the bricks bulged and that the
sidewalk was an awfully rocky looking affair, it is
not contended that any of the bricks projected to a
height exceeding three-quarters of an inch. Nor is
it shown that there were any deep depressions in the
sidewalk. The photograph before us shows the side-
walk in its true light. Its appearance, as thus pre-
sented, refutes the expression of opinion by the va-
rious witnesses for appellee. As has often been held
by the courts that it is not the duty of a city to make
its streets absolutely safe. It is required only to keep
and maintain them in a reasonably safe condition for
those exercising ordinary care for their own safety.
It is a physical impossibility to have the surface of a
sidewalk absolutely smooth and even. There will
necessarily be slight depressions and elevations. No
amount of care on the part of the city could guard
against such slight obstructions. While it is true that

the question whether or not a sidewalk is reasonably safe is ordinarily for the jury, yet it can not be contended that every obstruction, however slight, or every depression in the sidewalk, however little, will justify the court in submitting the case to the jury. There must be a limit somewhere. We shall not attempt in this case to decide when that limit is reached. We do say, however, that the evidence in this case fails to show that the sidewalk was not in a reasonably safe condition for travelers in the exercise of ordinary care. That being the case, we are of opinion that the court erred in refusing to award appellant a peremptory instruction.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.