## Louisville Railway Co. v. Jones, Admr.

(Decided October 26, 1910.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

1. Street Cars—Action for Damages—Care Required—Proper Notice and Proper Equipment.—The jury having been properly instructed on the trial of an action for damages by the administrator of one killed by a street car, the defendant, cannot be excused though deceased came suddenly on the track in front of the car, if proper notice of the approach of the car was not given, if the danger might have been averted by ordinary care in equipping and managing the car; though it is excusable if it was an accident that could not have been averted by ordinary care.

2. Same.—Juror—Disqualification—Competency—Bias—Former Suit Pending.—On the trial of an action for damages by one against a street car company, a juror is not incompetent because he has had a suit pending against the same defendant, growing out of a different matter which he had abandoned in good faith and thought it had been dismissed.

FAIRLEIGH, STRAUS & FAIRLEIGH, HOWARD B. LEE, FRED FORCHT, JR., and ALFRED SELIGMAN for appellant.

A. J. BIZOT and W. A. PERRY for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

Joseph Jones was run over by one of the cars of the Louisville Railway Company at the intersection of Fourth and Ormsby streets on the morning of October 7, 1907. He was killed almost instantly, and this action was brought by his personal representative to recover for his death. In the circuit court there was a judgment in his favor for $3,000. The railway company appeals.

The deceased was sixty-three years old and was a street sweeper in the service of the city of Louisville. According to the evidence for the plaintiff he was standing on the railway track engaged in his occupation of cleaning the streets when the car was about a square from him going north on Fourth street. A horse which was driven down Ormsby avenue, became fractious and could not be held by the driver. The deceased moved backward to get out of the way of the horse which was about to run over him. The car in the meantime was approaching him from the rear while his attention was on the horse. Mr. John L. Dodd, the well known lawyer, who was a passenger on the car and sitting in the front seat thus states the occurrence:

"Well, as we were coming north, just after taking my seat I saw an unruly horse—a fractious horse, as people frequently call it—near Fourth street on the south side of Ormsby, rearing up; I saw a man getting out of his way, in front of the car with his back towards the car. I became excited, of course, seeing the conditions, and I hollered to the motorman, using, perhaps, some language more forcible than polite, as to why he would not stop the car. He didn't stop it and the car hit the man in the back and went over him."

Mr. Dodd states that the car was some fifty or sixty feet from the man when his danger became apparent,

and also shows that the brakes on the car were out of order. The accident occurred about eight o'clock in the morning. A passenger who was standing on the front platform of the car makes this statement as to how it occurred:

"Well, I was standing on the front end of the car, and just as we got at Park street, near Park, I seen this man had a scraper in his hand, and he was scraping the street, and he was right in the middle of the track, and the car was going north at a pretty good speed, and the motorman never rang his bell or made no effort, and there was a wagon going west on Ormsby avenue, and this old man stepped back several feet so the car struck him."

On the other hand, the motorman testified that the man was at the side of the track and in a safe position until he backed on the track in getting out of the way of the horse when the car was too close to him to be stopped before it struck him.

A reversal is asked chiefly on the ground that the court misinstructed the jury, and that a new trial should have been granted because one of the jury had a suit against the company.

There was evidence from which the jury might infer either that the motorman did not set his brakes or that the brakes did not act. There was evidence that the motorman did set the brakes and that the brakes did not arrest the car either at this stop or at other stops on the same trip. The evidence was sufficient to warrant the court in submitting to the jury the question whether the brakes were defective. The court, among other things, gave the jury this instruction:

"I further instruct you, gentlemen, that if you believe from the evidence that the motorman in charge of the car was running his car at a reasonable rate of speed and keeping a lookout ahead and gave warning of its approach, and kept his car under reasonable control, and if you further believe from the evidence that the brakes and machinery were not negligently permitted to be, and were not in condition not reasonably safe for the control of the car, and if you further believe from the evidence that Joseph Jones came upon the car track suddenly, so suddenly and so close in front of the car, that the motorman in charge of the car, by exercising ordinary care, could not by stopping the car or arresting its motion, prevent the car from colliding with Jones and injuring

him, then the law of the case is for the defendant and you should so find.

The defendant insists that only the latter part of the instruction should have been given, and that this should not have been qualified by the first part of the instruction relating to the rate of speed, the sufficiency of the brakes and warning of the car's approach; it is urged that under the instruction the defendant is liable if the brakes were out of order or the car not under control, although the deceased came in front of it so close to it that the injury to him could not have been avoided if the brakes had been in order or the car under control; and that a different rule was laid down in Louisville Railway Company v. Garr, 112 S. W. 1130. But the facts of that case differ from the facts here. There is no doubt here, if the evidence for the plaintiff is believed, that if proper signals of the approach of the car had been given, and the car had been under proper control, the injury to the man might have been avoided; for it is very evident from Mr. Dodd's statement that he became very much excited because the motorman would not stop the car, in view of the palpable danger in which the man was placed. This accident occurred at a street intersection where the car should have been under control. The real issue was whether the accident occurred in the manner described by the motorman or in the manner described by the plaintiff's witnesses, and that issue was fairly submitted to the jury by the other instructions of the court. We do not, therefore, see that the defendant was prejudiced by the form of the instruction; for if the plaintiff's evidence was true, and this the jury evidently accepted, the car should have been stopped before it touched the man when going at the speed it was in fact making. The instruction would have been in better form if the court had told the jury that they should find for the defendant if the motorman gave reasonable warning of the approach of the car to the intersection, and Jones came upon the car track suddenly and so close to it that the motorman could not avert the injury to him by ordinary care if running at a reasonable rate of speed and with the brakes and appliances in a reasonably safe condition for the control of the car. The defendant cannot be excused though deceased came suddenly upon the track if proper notice of the approach of the car to the intersection was not given or if the danger to him might have been averted by ordinary care in equipping and

managing the car. It is excusable if the injury to the man was an accident which could not have been avoided by ordinary care. This question under the evidence was fairly submitted to the jury by the instructions of the court taken as a whole.

Before the jury were sworn, they were each asked if he had a suit against the railway company, and all said by their silence that they had not. In its grounds for new trial, the defendant showed that J. B. Dawson, one of the jury, had a suit against it. Dawson filed his affidavit to the effect that he had filed a suit against the railway company on March 23, 1908, but that he had abandoned the suit and was under the impression that it had been dismissed when he was called on the jury, and so answered the questions as he did. The trial of this case occurred on November 30, 1909, or about eighteen months after any steps had been taken in the suit brought by Dawson, and when he had been under the impression for more than a year that the action had been dismissed.

Dawson is a grocer. The suit was an action for damages for a car running into his delivery wagon. The juryman seems to have acted in perfectly good faith; he answered the questions asked him truthfully as he understood the facts. He was a qualified juror; the objection only went to his bias. The evidence does not show any unfriendly feeling on the part of the juror. The fact that he had brought a suit which he had abandoned would rather tend to show that he had concluded the defendant was not in the wrong in that matter. A juror is not incompetent because he has had a suit pending against the same defendant growing out of a different subject matter. (San Antonio v. Diaz, 62 S. W. 549; San Antonio Traction Co. v. Davis, 101 S. W. 554; Southern R. R. Co. v. Oliver, 102 Va. 710.) If the suit had been in fact dismissed this would be no ground for new trial. Where the juryman had in good faith abandoned the suit and thought it had been dismissed, the rule must be the same; for it could have no greater effect in one case than the other.

Judgment affirmed.