## City of Dayton v. Lory.

(Decided March 10, 1916.)

### Appeal from Campbell Circuit Court.

Municipal Corporations—Defect in Sidewalk—Question for Jury.—If the defect in a sidewalk is such that all reasonable men will agree, that in spite of the defect the sidewalk is in a reasonably safe condition for travel, there is no evidence of negligence to submit to the jury; but if the defect is such that reasonable men may well differ as to whether or not the sidewalk is reasonably safe for travel, then the question is for the jury.

E. E. KELLY and KELLY & REGENSTEIN for appellant.

A. C. HALL for appellee.

OPINION OF THE COURT BY JUDGE HURT.—Affirming.

On the west side of Berry street, in the city of Dayton, there is a cement side walk, which is eleven feet in width. It is composed of two rows of cement blocks, which are about thirty-six inches in width and five and one-half feet in length, and the ends of the blocks, in forming the sidewalk, come together in its center. One of these blocks tilted up at one corner, in the center of the sidewalk, to the height of from one and one-half inches to five inches above the level of the sidewalk. The evidence given upon the trial for the appellee, Mary A. Lory, was that the elevation was from two to five inches above the level surface of the sidewalk, while the evidence for the appellant, city of Dayton, was to the effect that the elevation would not exceed two inches. Be this as it may, along the center of the sidewalk the elevation of the block gradually grew less from the highest point of elevation, at the corner, to the other corner in the center of the sidewalk, which was substantially upon a level with the surface of the sidewalk. From the highest point of the elevated corner to the curbing the elevation grew less on toward the curb. This obstruction in the sidewalk had been permitted to remain, as described, for a year or two, and the officials of the city had actual knowledge of it and had given, some months before, notice to the abutting property owner to repair the sidewalk at that point. A large tree stood near the edge of the sidewalk and the elevation of the concrete block, presumably, was caused by an enlargement of the roots of the tree, which extended under the sidewalk.

On the 28th day of March, 1913, the high water from the Ohio river entered the house of appellee, who was a resident of the city, which made it necessary for her to remove from her dwelling to another building which was free from the water, and near to Berry street. While her daughters were engaged in removing some household effects with a wheelbarrow to her new place of abode, the appellee went to a grocery and there obtained some small packages of groceries and carrying them in her arms, proceeded along Berry street and when at the point where the concrete block was elevated in the sidewalk, she was observing her daughters removing the household effects mentioned above, when she tripped over this obstruction, her ankle was turned and she was thrown upon the cement sidewalk on the side next to the abutting property. Her ankle suffered a severe sprain, but she se-

cured a stick and with its assistance got to her home. On the next day her ankle became greatly swollen and a physician was called, but it was swollen to such an extent that he could not bandage it properly until two days thereafter. The condition of her ankle was such that she was unable to walk and was confined to her home for a period of about one month and for another month thereafter was obliged to use crutches in walking, and thereafter, for a considerable time, a cane. While confined to her home she suffered greatly from the pain of the sprain and was obliged to keep her foot elevated in a chair to obtain any ease. Thereafter and at the time of the trial of this case, which occurred in March, 1915, she was unable to walk to any considerable extent, without her ankle failing her, and it frequently was swollen, rendering it necessary to treat it with liniments, and she has been unable to follow her usual avocation, that of a house cleaner, with the same success and efficiency as theretofore because of her inability on account of the injured condition of her ankle, to mount ladders or to stand for a long period of time upon her feet. Previous to her injury she ordinarily made a wage of $7.50 per week. She was sixty-seven years of age, but was a strong woman at the time of the accident, and the evidence of the physician who treated her was to the effect that the injury, on account of her age, was permanent and that there was a small fracture of a bone of the foot.

She instituted this suit in the Campbell circuit court to recover of the city the damages which she alleged she had suffered by reason of the injury, and in her petition alleged that the city had negligently failed to keep the sidewalk, at the point of her injury, in a reasonably safe condition for public travel, and had actual knowledge of its defective condition previous to the time of her injury, and a sufficient time theretofore in which to have repaired it and put it in good condition, and that by reason of its defective condition she had suffered the injury complained of. The city, by its answer, traversed the allegations of negligence alleged in the petition, and, also, plead as a defense the contributory negligence of appellee. The trial resulted in a verdict for the appellee in the sum of $1,200.00, in damages, and a judgment was rendered in her favor against the appellant for that amount, accordingly. The appellant's motion and grounds

for a new trial being overruled, it saved proper exceptions, and has now appealed to this court.

The grounds for which a reversal is urged are:

First: That the damages allowed are excessive, and appear to have been given under the influence of passion or prejudice.

Second: The verdict is not sustained by sufficient evidence.

Third: The court erred in giving instructions Nos. 1, 2, 3 and 4.

Fourth: The court erred in refusing to give an instruction offered by the appellant.

Fifth: The verdict was contrary to law, because the proof showed that the elevation of the concrete block was not over an inch and one-half or two inches.

Sixth: Because two of the jurors who tried the case were not qualified to act as jurors because of not being housekeepers.

Seventh: Because of the misconduct of one of the jurors during the trial, which unduly influenced the jury to render a verdict for the appellee.

Under the instructions and the evidence in the case the jury was authorized to find for appellee the value of her physician's services, not to exceed $25.00, and the reasonable value of the time lost by her while totally incapacitated from working, the sum of $7.50 per week, for not exceeding twenty weeks, and then such sum as the jury might believe from the evidence would fairly and reasonably compensate her for such mental and physical suffering as she had endured or that it was reasonably certain she would endure in the future, and for the diminution of her power to earn money, if any, not to exceed in all the sum of $5,175.00, the amount claimed in the petition. While the amount of the damages allowed are large and the jury seems to have gone to the full limit in so doing, but considering all the elements of damages which they were authorized to allow and the proof bearing upon them, it can not be said that the amount allowed was so excessive as to strike the mind at first blush as having been superinduced by passion or prejudice. There is nothing to indicate that the jury acted under the influence of any passion or prejudice about the matter and there is no reason assigned for arriving at such conclusion. In City of Richmond v. Martin, 25 R., 1615, a

judgment for $1,500.00, for injuries similar to those suffered by appellee, was affirmed.

The second ground for a new trial is not insisted upon by counsel, in his brief, and, besides, without undertaking to state the evidence, further than what has already been said, there was ample evidence if the jury believed it to support the verdict.

No objection is urged to the instructions given by the court to the jury, and they seem to embrace the entire law of the case.

The appellant insists that the court erred to its prejudice in refusing to give the instruction offered by it. The instruction is as follows:

"The court instructs the jury that the city of Dayton is not a guarantor of the safety of pedestrians upon sidewalks. It is enough if the streets are kept in a reasonably safe condition for those exercising ordinary care for their own safety. There must be some point short of perfection that is not actionable negligence, and if the jury believe from the evidence that the elevation of the cement block in this case was only an inch and a half or two inches, then the law is for the defendant and the jury should so find."

The instruction offered, with the exception of the concrete portion of it, which directs the jury to find for the city if the elevation of the cement block was only an inch and a half or two inches, is a good abstract declaration of law; but an examination of the instructions given by the court shows that the city was not required to keep its streets in an absolute state of perfection, but only in a reasonably safe condition for use by pedestrians, and, furthermore, that it was the duty of the appellee in using the sidewalk to exercise ordinary care for her own safety; and if the city exercised ordinary care to keep the sidewalk in a reasonably safe condition for public travel, or if the appellee failed to exercise ordinary care for her own safety, and by reason of that failure contributed, by her own negligence, to her injury, in either event the jury was directed to find a verdict for the appellant. The law applying to cases of this kind and to the degree of care which a municipal corporation is required to exercise to keep its streets in a reasonably safe condition for travel, is very well settled, and the instructions in this case seem to fully define the rights of each party. City of Midway v. Loyd, 24 R., 2448; City of Louisville v. John-

son, 24 R., 685; City of Covington v. Johnson, 24 R., 602; City of Wickliffe v. Moring, 24 R., 419; City of Covington v. Asman, 24 R., 415; City of Richmond v. Martin, 25 R., 1516. It is true that in City of Covington v. Belser, 137 Ky., 125, the defect in the sidewalk complained of was a brick elevated three-fourths of an inch above the level of the sidewalk, and this court held that under the facts of that case that all reasonable men would arrive at the conclusion that the defect was insufficient to render the sidewalk unsafe for travel by any one exercising ordinary care for his own safety, and directed a verdict for the city.

In the City of Louisville v. Uebelhor, 142 Ky., 151, the defect complained of was in the street crossing and consisted of a wearing down of several inches, at the point where the flag stones joined, by the passage of wagons over the crossing, and under all the facts of that case the court held that such defects as those were so customary that the street crossing must be regarded as ordinarily safe, and denied a recovery to Uebelhor.

In City of Lexington v. Cooper, 148 Ky., 17, there was a niche in the concrete sidewalk at the outer edge of the pavement, two and one-half inches in depth, around a shade tree, and the court in that case, from all the facts of it, was of the opinion that there was no ground for a difference among reasonable men as to the sidewalk not being reasonably safe for the use of pedestrians.

In City of Louisville v. Haugh, 157 Ky., 643, where the defect complained of was a depression in the street, seven inches in depth, it was held that it was a question for the jury, under the evidence, to determine whether or not the street was in a reasonably safe condition for public travel.

In City of Covington v. Asman, *supra,* a brick in the pavement had become loose and was removed from its place, and the injury occurred by the appellee stepping into it, and in that case this court held that it was a question for the jury as to whether or not the sidewalk was in a reasonably safe condition for travel by persons using ordinary care for themselves.

In City of Covington v. Visse, 158 Ky., 134, the injury complained of by Visse was his striking his toe against a water box nine inches in width, but only one and one-half inches in height above the level of the sidewalk, and in that case the court, referring to the opinions wherein a

verdict was directed for the city in cases of slight depressions in the sidewalk, distinguished it from them by saying, that in that case, the defect was an elevation and that it was a question to be submitted to the jury as to whether or not the sidewalk was maintained in a reasonably safe condition.

It seems that the rule is, that where the defect in the sidewalk is of such character that reasonable men will come to no other conclusion, except that in spite of the defect, the sidewalk is in a reasonably safe condition for the travel of pedestrians, who are exercising ordinary care for themselves, there is then no evidence of negligence to be submitted to the jury and the court ought to direct a verdict for the municipality, from which a recovery is sought; but where the defect in the sidewalk is such that reasonable men might well differ as to whether a sidewalk with such an obstruction in it was reasonably safe for travel by persons exercising ordinary care for themselves, then it is a question for the jury and not for the court. City of Covington v. Visse, 158 Ky., 134.

Although the appellant did not move the court to direct a verdict for it, it insists that the judgment ought not to be upheld, because of the contributory negligence of the appellee. This contributory negligence, insisted upon, consisted in appellee failing to see and know of the defect in the sidewalk. It is true that she testified to having traveled over the sidewalk previous to the accident, and that it was in day light, when she could have seen the defect if she had looked for it, but she testifies that she did not know of its existence and that on the occasion of the accident, that she was engrossed with the worry of having to move from her home, and that her attention was attracted to her daughters, who were removing some of their household effects into the cottage to which they were removing, and thus failed to see the obstruction at the time she tripped and fell. The rule established in this jurisdiction pertaining to the failure of a, pedestrian to see a defect or obstruction upon the sidewalk, because his attention was diverted from the surface of the street, at the moment when he encountered the defect, is, that it does not, as a matter of law, establish negligence upon his part. Whether he was negligent in such state of case is a question to be determined by the jury. City of Ashland v. Boggs, 161 Ky., 728, 171 S. W., 461; Merchants Ice & Cold Storage Co. v. Bargholt, 129

Ky., 60; City of Lancaster v. Walter, 25 R., 2169; City of Brownsville v. Arbuckle, 99 S. W., 239; and others. In the case at bar, the question of the contributory negligence of appellee was, under a proper instruction, submitted to the jury.

The two jurors of whom appellant complains, as not being competent jurors, appear to have possessed all the statutory qualifications, except that of being housekeepers. Upon their examination, before being accepted or sworn, the appellant nor any one else made any inquiry of them upon that subject. Section 2253, Ky. Statutes, provides, that one of the qualifications for a juror is that he must be a housekeeper, but it also, provides that the fact, that a person, not a housekeeper, and who serves upon a jury, shall not be cause for setting aside the verdict, nor shall any exception be taken to him for such cause, after the jury has been sworn. If appellant had inquired of these jurors, upon their examination for acceptance, as it had a right to do, it could have learned of such want of qualifications upon their part before they were sworn, and the court would have excused them, but an objection to the verdict because a juror is not a housekeeper comes too late after a verdict. Combs v. Com., 97 Ky., 24; Louisville Ry. Co. v. Jones, 140 Ky., 425; Netter's Admr. v. Louisville Ry. Co., 134 Ky., 688; L. & N. R. R. Co. v. King, 161 Ky., 324.

The contention that the father of one of the jurors was a client of the attorney for the appellee, and for that reason the judgment ought to be set aside, is unavailing. Aside from this being no valid ground of objection to the juror, it appears that this charge is not founded, in fact. The affidavit of appellee's attorney, which is not disputed, shows that the father of the juror had, several months previous to the trial, been a client of the attorney, but at the time their relations as attorney and client had ceased.

The last ground relied upon for a reversal is, that while the attorney for the appellee was making the final argument in the case, and in the absence of the judge, who was temporarily absent in another room of the building, that one of the jurors pointed to his knee, which he said had been sprained several weeks previous to that time, when the attorney for appellee said: "Yes, and you will find that it will hurt and pain for years." The judge not being present, as he should have been, the appellant

was powerless to make any immediate objection to the conduct of the juror or the attorney, and did not make any objection until after the case had been submitted to the jury and it had retired for deliberation. We presume that the judge was present when the argument was finished and the case submitted and the jury sent out for deliberation, as no complaint is made of anything to the contrary. The appellant, with knowledge of what had transpired, did not make it known to the court until after the jury had retired, and then only desired that the record show what had transpired and that it then objected to it. No request was made of the court, in the premises, and the court took no action about it. The appellant did not request that the jury be withdrawn. No request was made of the court for a ruling of any kind, upon the subject of the protest. The appellant seemed willing to take the chances of a verdict in its favor, with knowledge of what it had complained of, and having taken the chances, it should not now complain, because the verdict was against it, instead of in its favor.

The judgment appealed from is therefore affirmed.