## City of Dayton v. Fox.

(Decided April 24, 1934.)

L. S. SHEPLER and CHAS. E. GRAHAM, for appellant.
THOMAS W. HARDESTY, Jr., CHARLES J. MELVILLE, and DANIEL W. DAVIES, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

Appellee, Helen Fox, brought this suit in the Campbell circuit court to recover of the appellant, city of

Dayton, for injuries she sustained on June 1, 1932, by falling on the sidewalk on the north side of Second street in the city of Dayton. She alleges in substance that the city had neglected to keep the sidewalk in repair or in reasonably safe condition for pedestrians, and that the bricks had become loose, broken, and defective and there were large dangerous unprotected holes and spaces in the sidewalk, and because of the unsafe and dangerous condition of the sidewalk she was caused to and did fall which resulted in the injuries complained of, and prayed judgment against the city for the sum of $10,000.

The city, defendant below, filed its answer in which it denied all material allegations of the petition and pleaded that plaintiff was guilty of contributory negligence.

By subsequent pleadings the issues were made and the case tried and resulted in a verdict and judgment in favor of appellee in the sum of $3,000.

Motion and grounds for a new trial were duly filed and overruled. This appeal results.

Numerous grounds were assigned for a new trial, but only a part of which are insisted on in brief of appellant on this appeal.

It is insisted for the appellant that the court permitted incompetent evidence to go to the jury over the objections and exceptions of appellant. The evidence complained of is that the court permitted appellee, plaintiff below, to introduce testimony relating to the repairs of the sidewalk at the place complained of after the accident occurred.

It must be conceded that the general rule is that evidence of repairs of premises after an injury is not permissible. However, there are exceptions to the general rule. It is insisted for appellee that the general rule does not apply to the instant case because appellant opened up the question by asking one of its witnesses in chief if the sidewalk was now (date of trial) in the same condition as it was when appellee received the injury complained of. The witness answered this question in the affirmative. Counsel for appellee then proceeded to cross-examine the witness on the question of repairs and later introduced other witnesses on the same subject whose evidence tended to show that within about two

weeks after the accident, the sidewalk at the point complained of was repaired. Both parties had, previous to this evidence, entered motion for the jury to view the premises in question, but the court later overruled the motion on ground that there had been evidence produced tending to show that the sidewalk had been repaired after the accident. Much complaint is made of the ruling of the court relating to the evidence of repair and in overruling the motion for the jury to view the premises. Had not the city first opened up the question of repairs, no doubt it would have been error to have permitted appellee to introduce such testimony. But because of the fact that the city opened up the question, it is, indeed, doubtful whether or not it could complain of appellee's rebuttal of such testimony. Word v. Commonwealth, 151 Ky. 527, 152 S. W. 556; Dunaway v. Commonwealth, 239 Ky. 166, 39 S. W. (2d) 242, and cases cited therein. However, as the case will be reversed on another ground, we do not express an opinion on the question of the propriety of this evidence and the ruling of the court on the motion for a review of the premises by the jury. It may not occur on another trial.

It is also insisted as a ground for reversal that the verdict is not sustained by sufficient evidence. This question will require a summary of the substance of the evidence.

Mrs. Fox testified that at the time the accident occurred it was raining very hard "and the water was pouring all over the sidewalk" and that she did not see the place (defect complained of) and before she knew it she fell. We note the following questions and answers thereto:

"Q. What was the condition of the sidewalk on that day, as to whether it was wet or dry? A. Well, it was raining so hard and the water was running, and when I fell, I fell right into a hole.

"Q. Now what caused you to fall? A. The brick was out of there and I slipped, just most right down like this.

"Q. I'll ask you to state whether or not the sidewalk was even at that place. A. No, sir."

Paul Hughes, next witness introduced for plaintiff,

testified with respect to the condition of the sidewalk as follows:

"Q. Are you able to tell us anything about the condition of the sidewalk in front of No. 761, Mr. Musselman's house? [The place where appellee fell.] A. I would say it was in first class condition, considering it was an old-fashioned brick walk.

"Q. Tell us whether or not it was a smooth walk. A. Just what do you mean by that?

"Q. Was it level or were there depressions and ruts in it? A. I never noticed any ruts.

"Q. You walked over it every day? A. Pretty nearly every evening, going to my boy friend's house."

Fred Hillsoff, a son-in-law of Mrs. Fox, was introduced in her behalf, and testified that the sidewalk was "pretty bad"; that it was raining that day and was slippery and there were a few holes and when it rains it fills up with water and you cannot notice the holes; that the surface was "kindly wavy like and a few holes in it." He stated that he helped to pick up his mother-in-law at the place where she fell and that the sidewalk at the place where she was sitting was "wavy and had a little cement on top of the brick; that it looked like the brick had been put down and wasn't cleaned off." He further stated that there were holes in the sidewalk three or four inches deep and some as high as six inches at that time.

It will be noticed that the witness did not state that the holes referred to by him were at the place where his mother-in-law was sitting. Neither did Mrs. Fox state that she stepped in the hole. She merely stated that she slipped and fell, but she does not state that the holes in the sidewalk caused her to slip. On cross-examination the son-in-law, Hillsoff, testified as follows:

"Q. Do you mean to say that the brick are out, is that what you mean to say? A. It looks like to me the bricks have swagged down a little bit there.

"Q. You don't mean to say the bricks are out there? A. They were swagged down a little, yes sir.

"Q. All you mean by holes is, it is wavy there? A. Yes, sir, there is holes there.

"Q. You don't mean to say there were any bricks out of the sidewalk? A. No, the place where I picked her up, no, but it was kindly wavy, like that.

"Q. Like the bricks had sunk a little bit? A. It looked to me like that."

Mrs. Emma Musselman, introduced in behalf of appellee, testified that the sidewalk in the place in question was a brick sidewalk and some bricks are lower or higher than others, but she had not seen any holes there. She was asked if the unevenness of the bricks made depressions in the walk and she answered: "Yes, just here and there." On cross-examination Mrs. Musselman stated that there were no holes in the sidewalk made by bricks being out of place, but there existed a "wavy condition with some bricks standing higher than others."

Vernon Musselman testifying for the city, defendant below, stated that he saw Mrs. Fox going down the sidewalk just before she fell and when she fell she called him and he immediately went to her. He was asked if she expressed herself as to what might have caused her to fall, and he answered: "She said she slipped on mud." He was asked to describe the condition of the surface of the sidewalk and he said: "Well, it is brick and there is no brick out and it was as smooth as any sidewalk, and that the variations in the height of the various bricks along there were very little, if any." Mrs. Rosella Musselman testified that she went to the assistance of Mrs. Fox immediately after she fell and assisted in getting her to the house and Mrs. Fox made the statement that she slipped on the mud. In speaking of the condition of the sidewalk she said that there were no bricks out but that it was not level and just like any other brick sidewalk and the variations of the heights of bricks were very little.

The evidence of the witnesses who testified that Mrs. Fox said that her fall was caused by slipping on the mud, is uncontradicted. Mrs. Fox was called in rebuttal near the close of the testimony for appellant and after these witnesses had testified to her statement, but, as the record discloses, she made no reference to these statements. In view of the fact that it was raining and water and mud running over the sidewalk, and, accord-

ing to the evidence of some of the witnesses, there was cement on the sidewalk, which conditions, of course, would tend to create a slick or slippery condition, calculated to cause a person to fall.

It is well settled that the liability of the city is not that of a guarantor or insurer of the safety of the pedestrian. The city is only bound to use reasonable care in making the streets and sidewalks safe and convenient for travel. It is under no obligation to provide for everything that may happen upon them but only for such things as ordinarily exist or such as may be reasonably expected to occur to the users thereof when in the exercise of ordinary care for their own safety. City of Pikeville v. Williams, 213 Ky. 52, 280 S. W. 467.

Mere "unevenness" of the surface of a sidewalk is not such obviously dangerous or unsafe condition as to impress the mind of a reasonably prudent person as unsafe. The great weight and preponderance of the evidence is to the effect that there were no holes in the sidewalk at the place where Mrs. Fox fell, but it was only, in the language of the witnesses, "uneven and wavy."

A dangerous or unsafe condition will not be presumed from the accident alone and the mere fact that a pedestrian slipped and fell upon the sidewalk is insufficient to warrant a recovery, unless it is shown that the condition of the walk at the place was necessarily dangerous or unsafe for pedestrians when in the exercise of ordinary care for their own safety, and that the unsafe condition was the proximate cause of the injury. Tudor v. City of Louisville et al., 172 Ky. 429, 189 S. W. 456.

In view of the evidence as a whole respecting the condition of the sidewalk and the proximate cause of appellee's fall, it is our conclusion that the verdict of the jury is flagrantly against the great weight and preponderance of the evidence, and is not supported thereby.

The judgment is reversed and remanded with directions to grant appellant a new trial and for proceedings consistent with this opinion.

The whole court sitting except Judge Thomas.