## City of Louisville v. Moore.
### (Decided March 5, 1937.)

GAVIN H. COCHRAN and MARK BEAUCHAMP for appellant.
BRENT OVERSTREET for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Ernest Moore, a resident of the City of Louisville, sued the city for $5,104, claiming that due to a defect in the grating of a catch basin upon which he stepped, he was caused to fall and injure himself. Of the sum sought $50 was to recoup him for services of a physician and $54 for loss of time from his customary labors. Upon the trial of the case a jury awarded him $210, and, after motion for a new trial was overruled, judgment was entered for that amount against the city. Motion is made for appeal.

The alleged injury occurred on August 26, 1934.

Appellee was a chauffeur, and had been so employed for ten years. He lived at 726 East Breckenridge street, and it was his custom to catch a street car at the corner of Shelby and Breckenridge to report for his duties on Eastern Parkway. On the morning of August 26, 1934, appellant walked to that corner, where the car which he wished to board was standing near the intersection; he made known his intention and the car remained standing. In describing the accident, appellee said: "I stepped off the curbing and my heel went through this catch basin and snatched my shoe off and broke my glasses and threw me on my face in the street." He says that as the result of the fall he "broke the shoe strings and pulled my shoe off"; that he suffered a 3-inch cut across his heel "to the bone." The physician describes it as a laceration "just above the heel about three inches long"; he rendered the wound aseptic and applied tape.

Appellee says that after the fall he picked up his shoe, put it on, and "hobbled" to a car going north to Broadway, and then to the home of his employer, where he bandaged his foot. Later, he went to the doctor and thence home, where he was confined for three weeks, suffering much pain from the injury. He was earning $18 per week and paid the physician $50 for ten home and ten office calls.

Appellee says when he stepped off the curb he did not notice the catch basin; had never noticed it before. After he came from the doctor's office he went back and looked at the catch basin. He says it was "rusted, warped and spread." He had been living at his present address since June, 1934, and on cross-examination said that up to the date of the accident he had caught the car at the same corner every morning; that he had never noticed the basin, consequently had noticed nothing wrong with it.

An employee of the City Engineering Department testified that he was familiar with the general sewer and drainage system and basin tops used in the city; that he knew the type basin top used at the corner of Shelby and Breckenridge on the date of the alleged accident. The entire basin was about 30¾ inches long by 22¼ inches wide. The grating proper was 21 by 16 inches, consisting of cast-iron bars running crosswise of

the width. The distance from the center line of one bar to the other was 1⅞ inches, leaving a clearance between the bars of 1⅛ inch.

This witness referred to plans and specifications, and testified that the catch basin top in question was one put there according to the plans and specifications prior to 1918; perhaps put down in 1911 according to the then adopted specifications. Since 1918 the old type or design had been abandoned, but quite a number of the old design were still in use in the city. The type in use now, under new specifications, still has a catch basin frame and grating, but of different construction. The space between the grate bars is now 1½ inches. Being shown a photograph of the grating in question, he said, "The bars were warped, but I would not say badly warped." Witness says the new basin and grating is used because it is found to be more economical. There are still 1,737 basins of the old type in use in the city. He said the grating was all right, even though it was warped; that it would be a safe type of catch basin for a pedestrian to walk on. When asked the question, "Would you say that picture, which represents that top in its warped condition, is a safe top for pedestrians to walk on in the City of Louisville with safety?" he replied "Yes sir." And again, "You think there would be no danger to people in walking on that sewer top?" he answered, "No sir."

Upon the conclusion of appellee's evidence appellant moved the court for a directed verdict. The motion was overruled and appellant introduced only one witness—the photographer who made the picture of the basin top and grating. He identified the picture and testified as to measurements, which he said showed the grating to be 19 by 14 inches, with an inch and a quarter space between them, excepting the first space on the left, which was probably an inch and a half. Instead of describing them as warped sideways, he said, "They were swayed down in the middle, not as much as an inch. There were no loose bars, the bars were all tight."

Appellee was recalled and stated that his heel caught "near about the center. I don't think it could have been over there," indicating the left end where the space between the bars was slightly greater. He

was wearing shoes with the ordinary flat heels made of rubber.

Upon motion for an appeal here it is urged in support of ground for reversal that appellant was entitled to have its motion for a peremptory sustained, which motion was made at the close of plaintiff's testimony and renewed at the close of the case, and each time overruled. It is contended that the court committed error in thus ruling.

It is argued by appellant that the pleading predicates the cause of action and the city's liability solely upon the building and maintenance of an improperly constructed catch basin grating, and further that there was no evidence that the catch basin was negligently or improperly constructed or maintained.

We have concluded that the chief question (reserving all others) is whether or not appellee has shown by proof any act of negligence which would render the city liable for his alleged injury. In the first place, it is inconceivable that the injury was caused in the manner so meagerly detailed by appellee. The court cannot discern from the proof just how his heel, on an ordinary flat shoe, could have been caught in any of the interstices of the grating, even though it had been claimed the catching of the heel·was in the extreme left side of the grating, admittedly an eighth of an inch wider than the spaces between the other bars. It must be observed, however, that appellee pointed out the place in the grating where he claimed his heel was caught, and it was in the center of the grating some distance from the left end.

The difficulty in appellee's position is that he failed signally to prove any act of negligence on the part of appellant that would fasten liability upon appellant. His version of the accident is set out above, and it will be noted that he does not say there was a warping or spreading at the point in the basin where he had indicated that his shoe heel caught.

No other witness saw appellee fall. One woman on the street car saw him arising from the street, but could tell nothing of the fall. The evidence of the city engineer who was introduced by appellee, and by whose·evidence he ought to stand, has been quoted above.

It will be seen from the foregoing evidence as to the condition of the grating, and, as to its being safe or otherwise, there was no such proven defect in the grating or its bars, at least at the point indicated by appellee, as would justify the conclusion that there was sufficiently shown proximate cause. As we view appellee's contention, it almost narrowed to the argument that, since he caught his heel somewhere in the grating, negligence was thereby attributed on the city. He must show more than that. This is not a case where the doctrine of res ipsa loquitur is applicable. Thomas v. National Concrete Construction Company, 166 Ky. 512, 179 S. W. 439; Fehr Brewing Company v. Corley, 265 Ky. 308, 96 S. W. (2d) 860, and cases cited.

No matter whether the case here was based on negligence of the city in improperly constructing the basin, or in permitting it to become and remain in such a condition as to be dangerous to travelers, it devolved upon appellee to show that the method of construction was unsafe or that the permitted condition was dangerous. City of Pikeville v. Williams, 213 Ky. 52, 53, 280 S. W. 467. It is well settled that a city is not a guarantor or insurer of the safety of pedestrians. The city is only bound to use reasonable care in making the sidewalk or street safe and convenient for travel. It is under no obligation to provide for everything that may happen upon them, but only for such things as ordinarily exist or such as may be reasonably expected to occur to the users thereof when in the exercise of ordinary care for their own safety. City of Pikeville v. Williams, supra; City of Dayton v. Fox, 254 Ky. 51, 70 S. W. (2d) 961; City of Bowling Green v. Ford, 263 Ky. 523, 92 S. W. (2d) 744. In City of Ludlow v. Albers, 253 Ky. 525, 69 S. W. (2d) 1051, 1055, a case not dissimilar to the case at bar, we wrote:

"It was the duty of Albers to establish by competent evidence that the dangerous or defective condition of the street was the proximate cause of his injury, i. e., 'the natural and continuous sequence, unbroken by any independent cause, produced the injury and without which it would not have occurred.' [Citing cases.] He is not entitled to rest the verdict of the jury in his favor, upon vague, uncertain, and speculative statements of himself, his brother, and Helen Robertson. They are insuf-

ficient to induce conviction as to what was the efficient or the proximate cause of his injury."

In City of Dayton v. Fox, 254 Ky. 51, 56, 70 S. W. (2d) 961, 963, the court said:

"A dangerous or unsafe condition will not be presumed from the accident alone and the mere fact that a pedestrian slipped and fell upon the sidewalk is insufficient to warrant a recovery, unless it is shown that the condition of the walk at the place was necessarily dangerous or unsafe for pedestrians when in the exercise of ordinary care for their own safety, and that the unsafe condition was the proximate cause of the injury. Tudor v. City of Louisville et al., 172 Ky. 429, 189 S. W. 456."

From what we have said above, it is concluded that the court below should have sustained the motion for a directed verdict at the conclusion of appellee's testimony. City of Covington v. Belser, 137 Ky. 125, 123 S. W. 249. His failure to do so requires us to sustain motion for appeal, grant same, and to reverse the judgment with directions to grant appellant a new trial in conformity with this opinion.