# City of Covington v. McGill.

Nov. 17, 1939.

Eugene C. Benzinger and Ralph P. Rich for appellant.

Sawyer A. Smith for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At about 1:30 P. M. on November 11, 1937, at the time of the accident herein complained of, the appellee and plaintiff below, Kathryn McGill, was just past 62 years of age. She resided on Seventh Street in Covington, Kentucky, about one and one half blocks from Main Street, which latter was crossed by Seventh Street in the same city. She went from her residence to Main Street and thence along the east sidewalk of the latter to Fifth Street, which also crossed Main Street, the intersection being in the busiest portion of the city. The signal light maintained by the city at that point was in her favor and she attempted to cross Fifth Street; but after she had passed its center she stepped into a hole within the space marked off by its white lines for the use of pedestrians, causing her to career and fall, and which produced not only a sprain of one of her ankles, but likewise broke or fractured some bone therein, and by which she also sustained other slight injuries, including a wrench to her entire body. Later in the afternoon, a

physician was called and he discovered by the aid of X-ray the broken bone, which made the sustained injuries greatly more serious than was at first supposed by plaintiff. Her ankle was encased in a plaster of paris for more than six weeks and she was confined the major part, if not all of that time in bed. She filed this action against the City of Covington to recover damages on account of her injuries and in her petition she charged that the city failed to maintain its public way at the place where plaintiff fell in a reasonably safe condition for travel.

Defendant denied the negligence charged against it, and in a second paragraph it averred contributory negligence on the part of plaintiff, which was controverted, and upon trial the jury, to whom the cause was submitted, returned a verdict in favor of plaintiff for $1,000 damages sustained by her injuries, and $100 for medical bill, upon which the court rendered judgment and later overruled defendant's motion for a new trial, followed by its prosecuting this appeal.

But two points are argued in brief for appellant as grounds for a reversal of the judgment, and which are (1) that the depression or hole in the street was of such slight depth (from one to one and a half inches as counsel insist) as to not render the street unsafe and to justify the court as a matter of law to hold that it was "reasonably safe" within the rule measuring defendant's liability, and (2) that the court abused a sound discretion in permitting plaintiff's son, some thirty odd years of age and who resided with her, to testify after having remained in the court room and heard the testimony of other witnesses. No other complaint of the verdict and judgment is made or argued on this appeal, and the two we have designated will be disposed of in the order named.

1. The hole or depression into which plaintiff stepped, and because of which she was made to fall, was some 12 inches wide and three or four feet long, and was located near the middle of the marked out boundary for pedestrians at that point. Her attention at the time was largely directed toward approaching vehicles to the intersection, so as to avoid a collision with them if they should attempt to cross her pathway as so marked. She made no measurement of the depth of the depression at the time of the accident, and after she recovered sufficiently to leave her bed, she wrote a letter to the City

Solicitor asking compensation for her injuries, and in which she stated the depression was "an inch and a half deep;" which was her conclusion formed from a casual observance of it after being lifted from her fall. One or two, or perhaps, three witnesses testifying for defendant placed the depth at about the same except one witness testified to having measured it sometime after the accident (and not long before the trial) and he placed its depth at three eighths of an inch. However, it was indisputably shown that between the time of the accident and when that measurement was made the depression had been filled with some sort of asphalt substance, but later taken out with a view of photographing the place, and it was afterwards refilled.

Plaintiff testified on the trial—and she was corroborated by other witnesses—that the depression was not only abrupt around its edges, but was anywhere from two and one-half to three inches deep, and that it was not oval in shape as some of defendant's witnesses testified. Under that condition of the proof—as so briefly yet substantially stated—the court overruled defendant's motion for a peremptory instruction in its favor and submitted the issue of reasonable safety of the street to the jury, followed by its verdict.

To sustain their contention counsel for defendant cite us to a number of cases from this court, among which are: City of Louisville v. Moore, 267 Ky. 536, 102 S. W. (2d) 989; Tudor v. City of Louisville, 172 Ky. 429, 189 S. W. 456; City of Louisville v. Uebelhor, 142 Ky. 151, 134 S. W. 152, and City of Covington v. Belser, 137 Ky. 125, 123 S. W. 249. Those cases are but examples of numerous other domestic ones announcing the principle that municipalities are not guarantors of the safety for travel of its sidewalks or streets, since they are not obligated to maintain them to the same degree of smoothness and safety similar to that of a floor in a residence or other building. Constant exposure to the weather is taken into consideration by courts in framing and announcing the measurement of their duties in the premises. We have no quarrel to make with the governing principles announced in them, but the question for decision in this case, as presented by the testimony given by plaintiff and her witnesses makes a case governed by the class of opinions relied on by defendant's counsel, or whether her testimony brought the case within the principles announced in the cases cited by her

counsel and others not cited but to the same effect? Those cited by her counsel are, City of Bowling Green v. Ford, 263 Ky. 523, 92 S. W. (2d) 744; City of Ludlow v. Gorth, 214 Ky. 833, 284 S. W. 84; City of Harrodsburg v. Sallee, 142 Ky. 829, 135 S. W. 405; City of Dayton v. Lory, 169 Ky. 94, 183 S. W. 252; City of Louisville v. Haugh, 157 Ky. 643, 163 S. W. 1101; City of Covington v. Asman, 113 Ky. 608, 68 S. W. 646, 24 Ky. Law Rep. 415; City of Covington v. Visse, 158 Ky. 134, 164 S. W. 332; City of Lebanon v. Graves, 178 Ky. 749, 199 S. W. 1064, L. R. A. 1918B, 1016; City of Louisville v. Hale's Adm'r, 238 Ky. 182, 37 S. W. (2d) 20, and Prather v. City of Louisville, 243 Ky. 753, 49 S. W. (2d) 1001.

Without stating the facts appearing in any of them it is sufficient to say that they sustain counsel's argument that a depression or hole in a street of the character described by plaintiff's witnesses in this case would sustain a verdict finding an unsafe condition, for the consequences of which to a traveler on the street the city would be held liable. In this case it was shown that some months prior to plaintiff's accident excavating was made at the point where she fell with a view of re-arranging some kind of piping under the street, or the changing of the location of a city street light when either Main or Fifth street was widened, and the testimony leaves no doubt but that the hole in the street had existed a sufficient length of time to have enabled the city to have discovered and repaired it. The jury so found and that finding is amply supported by the testimony. We, therefore, unhesitatingly conclude that argued point (1) is without merit.

2. Point (2) is equally so. To begin with the record discloses no order of the court placing the witnesses under the rule. However, it does show that the right of plaintiff's son—concerning whose testimony the point is made—to remain in the court room during the trial was discussed at its beginning and counsel for defendant then consented that he might remain in the court room. After he had testified, without objections, about his mother's condition, and the painful and other effects of her injury—and after stating that he was not present and did not see her fall—he was asked this question: "Was this depression between the white lines?" Before an answer was given defendant's counsel stated: "I do not think this witness ought to be per-

mitted to testify. He has been in the court room all the time.'' Plaintiff's counsel then stated that: ''Before we started you agreed for him to remain in the court room. He is her son.'' Defendant's counsel then remarked: ''I didn't know he was going to testify. Anyway, I understood him to say he wasn't (present) at the place when she was injured. He said he went down to examine it afterwards. It might be my own fault. I understood he wasn't there and I don't see how he can testify as to the condition of the street or the sidewalk. I move his testimony be excluded.'' The court overruled counsels' motion but to which ruling he interposed no objections or exceptions. In the circumstances the question is far removed from the same question as it was presented in the case of Ray v. Commonwealth, 241 Ky. 286, 43 S. W. (2d) 694, which is the only case cited by counsel in support of this point.

There is nothing in the record to show that the rule was ever invoked against the witness' remaining in the court room. It also appears that counsel consented for the witness to remain in the court room, and when his motion to exclude the testimony of the witness was overruled he made no objections, nor did he take any exceptions thereto. It is, therefore, clear that this point is also without merit. There is no complaint of the size of the verdict, nor could there be in view of the testimony adduced.

Perceiving no ground for reversing the judgment, it is affirmed.