# Louisville & Nashville Railroad Company v. Jackson's Administrator.

(Decided March 4, 1932.)

TODD & BEARD, ASHBY M. WARREN, J. P. HAMILTON and H. T. LIVELY for appellant.

GILBERT, PICKETT & MATTHEWS and T. B. ROBERTS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

J. Hunt Jackson, a youth about 16 years of age, at about 11 p. m. on September 15, 1929, was killed at a grade crossing of a public road over the tracks of the appellant and defendant below, Louisville & Nashville

Railroad Company, in the town of Bagdad, Ky. His father qualified as his administrator, and filed this action against the defendant in the Shelby circuit court to recover for his decedent's death upon the ground that defendant had failed to comply with its duty in the maintenance of the highway across its track, whereby the horse that decedent was riding was caused to fall and fatally injured him. The answer consisted of a denial and a plea of contributory negligence in general terms, which latter was appropriately denied.

The first trial resulted in a hung jury, but at the second one plaintiff recovered a verdict against defendant in the sum of $5,500, which the court declined to set aside on its motion for a new trial, and to reverse the judgment rendered thereon it prosecutes this appeal. Counsel for defendant in their briefs filed in this court argue as grounds for reversal (1) error of the court in overruling its motion for a peremptory instruction in its favor, made both at the close of plaintiff's testimony and at the close of all the testimony; (2) error in the admission of evidence offered by plaintiff over the objections and exceptions of defendant; and (3) error in the given instructions and in refusing to give others offered by defendant—each of which will be disposed of in the order named.

In disposing of ground 1 it becomes necessary to make a brief synopsis of the substantial facts. The day of the fatal accident was on Sunday, and the decedent as well as two companions, who witnessed the accident, came to Bagdad some time during that day and remained there, "walking about over the town," until a late hour that night. The horses they were riding were hitched in or near a garage located not far from the crossing where the accident occurred. The dirt road from the garage to the south edge of the right of way at the crossing ran in a northeastern direction and then made a turn across the railroad track, running east and west. There were three tracks, the middle one being the main one and a switch track on either side of it, and the roadbed across all of them was made of gravel or screenings of rock, but neither of the tracks had a board or plank "on each side of the rails" except the main one; but, according to the evidence of many witnesses testifying for the defendant, the surface of the road, as constructed of the materials referred to, came to the level of the rails of the two side tracks, and the planks on the sides of the rails

of the main track were installed to protect necessary signal wiring along the rails of that track and not for the purpose of improving the roadbed. The testimony for plaintiff was to the effect that between the rails of the north side track, which was the last one reached by the decedent before his horse fell, there were two small holes in the rock or gravel forming the roadbed, one on the right side and against the north rail, and the other against the south rail and immediately north of it. The north hole, according to plaintiff's witnesses, was larger and much more pronounced than the south one; the latter being what might be termed only a slight indenture in the surface. But plaintiff's witnesses in the main testified that the north hole on the south side of the north rail of the north track was about twelve inches long, three or four inches wide, and at places was as deep as the height of the rail, and there was testimony tending to show that one fore foot of the horse decedent was riding stepped or slipped into that hole and caused it to stumble and fall, but the only competent evidence supporting that theory was the discovery of the imprint of the heel of a horseshoe in that hole, and that one of decedent's companions as the horse started to fall saw the flash of a spark about one of its feet, which was supposedly made by the horse's foot coming in contact with the rail.

However, such spark could easily have been produced by a contact of the horseshoe with the top of the rail as well as against its side, as is the theory of plaintiff and his counsel. The supposition is also advanced that the hind feet of the horse, or one of them, got into the south hole that we have described and which fact possibly contributed to the catastrophe. It must be remembered that, conceding all of plaintiff's testimony to be true, the question is, whether either alleged hole in the roadway, and constituting the charged default of defendant, was the proximate cause of the horse falling. But we have concluded that under the scintilla rule there was enough evidence to establish that fact to authorize a submission of the case to the jury, and for which reason the motion for a peremptory instruction was properly overruled.

The defendant's testimony established the fact that there was no hole at any place in the roadbed across its tracks or on its right of way, but that, on the contrary, the surface of the road over its right of way conformed to the statutory requirements embodied in subsection 5 of

section 768 of our present Statutes, and that the accident was in nowise attributable to any defalcation of it.

The only evidence complained of under ground 2 relates to certain acts and alleged statements of defendant's section foreman that occurred and were made the next morning after the accident. He with others was on the scene making examinations, and, as claimed by defendant's witnesses, some one had raked or in some manner removed the gravel or rock just south of the north rail of the north track away from the rail with the view of discovering if possible a place on the rail where the horse stumbled. The section foreman marked a place on that rail, and plaintiff was allowed to prove, after laying the foundation therefor, that the foreman also stated at that time: "This is where the horse stumbled." Defendant's objections thereto were overruled with exceptions, followed by an admonishment by the court that the evidence was admissible only in contradiction of the section foreman; but we think it was not admissible even for that purpose, since at best it was only an opinion of the witness and, was also clearly incompetent under the res gestae rule. The opinion of the witness was evidently formed (if indeed he made the statement, but which he denied) from what he heard and the conditions he saw on the morning following the accident, and which conditions were brought about, at least to some extent, in an effort to discover the place where the horse stumbled.

But, whether so or not, the opinion of the foreman, which was based upon subsequent evidence gathered by him, was well within the classification of a collateral fact which could not be contradicted even for the purpose of impeachment, and we think the court erred in permitting the witness Bailey, or any others, to testify to it. The foreman explained that the mark he made on the rail was to locate the spot where others said, or where it was contended, that the horse stumbled, and for no other purpose. Neither the making of the mark on the rail, nor the statement objected to, could have any bearing on the principal fact, i. e., the actual place and cause of the horse stumbling. The marking but indicated, and was a registration of, the place of the occurrence of such principal fact, according to the opinion of the foreman from what he learned on that occassion.

Ground 3 may be divided into two subdivisions: (a) Criticism of instruction 1 given by the court on the motion

of plaintiff over defendant's objection, and (b) error in refusing to give offered instructions by defendant. The complaint under subdivision (a) is that instruction No. 1 made defendant an insurer of the "suitable condition" of the highway across defendant's tracks "for the traveling of the public using said crossing," when the petition alleged and the law is, as defendant contends, that it is only required to exercise ordinary care for such maintenance of the highway across its tracks. In support of this criticism, the case of Louisville & N. R. Co. v. Wright, 199 Ky. 422, 251 S. W. 188, is chiefly relied on. In that case we held that the railroad company was only required to exercise ordinary care to maintain the roadway upon which the accident there involved occurred. But counsel for plaintiff contend that the principle as so announced therein is not applicable here, because the roadway there involved was not a public one, and that the duty imposed upon the railroad company therein to maintain the traveled way was only a common-law one and not a statutory one, and that a contrary holding was made by this court in the case of Louisville & N. R. Co. v. Croft, 201 Ky. 803, 258 S. W. 679, and which contention so made by plaintiff, if correct, makes a railroad company an insurer of the safety for travel of the surface of the public roads across its tracks.

But an examination of the Croft Case, and others referred to in that opinion, reveals that they were bottomed upon the undisputed fact that the defect complained of had existed for more than a sufficient time to have been discovered by defendant through the exercise of ordinary care. Under such conditions the imposition of liability through a failure to exercise ordinary care to discover the defective condition of the highway was eliminated from the case, and for that reason the question involved in the criticism here made had no place in them. On the other hand, the case of Louisville & N. R. Co. v. O'Nan's Admr., 110 S. W. 380, 381, 33 Ky. Law Rep. 462 (not elsewhere reported), presented for this court's consideration, inter alia, the precise question we are now considering. It was submitted in that case by the fifth instruction given therein, and, in disposing of it contrary to plaintiff's contention, but in harmony with the one made by defendant herein, the opinion said:

"By the fifth instruction the court told the jury that it was the duty of the defendant to use ordinary

care to maintain its crossing and any approaches thereto in good 'repair and condition so as not.to unreasonably interfere with or obstruct the progress of travelers attempting to use the same.' In lieu of the words 'in good repair and condition so as not to unreasonably interfere with or obstruct the progress of travelers attempting to use the same' the court on another trial will use the words 'in such repair as is reasonably safe for public travel.' ''

Later in the opinion it was said:

''The instructions of the court with the modifications we have indicated present the whole law of the case.''

From the first excerpt supra it will be observed that the only duty imposed upon the railroad company in that case, and which involved a public crossing, was the exercise of ''ordinary care to maintain its crossing and any approaches thereto . . . in such repair as is reasonably safe for public travel.'' To the same effect are the opinions in sister states, and also the text in Elliott on Railroads (3d Ed.) vol. 3, sec. 1673.

But, independently of the last-cited cases and authorities, logic and reason would seem to support the contention of counsel for defendant; i. e., that, in the absence of undisputed evidence of actual or presumptive knowledge defendant is only required, under the common law, or by the statutes, to exercise ordinary care to maintain the highway across its tracks, to the requisite standard, and is not an insurer of such maintenance. A contrary holding would make it responsible for all obstructions and defects howsoever suddenly created, and regardless of any fault or dereliction on its part. A sudden freshet, or a recently created defect by heavy traffic, or by other impediment to safe travel, though produced by a cause for which the company was not blamable, would render it liable even without its knowledge or an opportunity to repair. We are convinced that it was not the purpose of the common-law rule to impose any such liability, and we entertain an equally confirmed opinion that the statute went no further and which, as we have seen, was the holding of this court in the O'Nan opinion. We therefore conclude that the court erred in omitting from instruction No. 1 such measurement of defendant's duty.

In support of subdivision (b), supra, of this ground, it is argued by counsel for defendant that the court erred in failing to give to the jury, or in anywise submitting to it, the defenses incorporated in its offered instructions C, D, and F, the first of which, C, exonerated defendant from liability if the accident was due to the unreasonable speed of the animal while passing over the railroad track, while the second one, D, exonerated it if decedent failed to exercise control over his horse, taking into consideration its age and infirm physical condition, if any, and by reason of which the accident occurred, and the third one, F, exonerated it if the horse stumbled because of the aperture by the side of the rails left open for the flanges of the car wheels, to support which there was at least negative testimony, because all of defendant's witnesses stated that there was no other aperture in the highway, except such openings, and it is not beyond probability that the toe of the horse's foot might have caught against the rail immediately adjoining such openings, although the rail did not extend above the surface of the road. Such openings are absolutely unavoidable, for without them no train could pass over the crossing, and, if the accident occurred because of their presence, it is evident to our minds that neither the common law nor the statute ever intended to impose liability therefor.

There was undisputed evidence that the mare which decedent was riding had theretofore appeared in more than one modern horse swapping ring and that she was about fifteen or eighteen years of age and stiff in her joints. That evidence was undisputed, except plaintiff denied the stiffness of her joints, but he knew nothing of her age. However, the person from whom he obtained her, and the one from whom such person obtained her, testified to her age as stated, and it was denied by no one. Moreover, the undisputed proof was and is that the deceased and his two companions, following just behind him, and both riding the same horse, started from the garage in a lope, and that they were so traveling when they attempted to cross the railroad track. It is true that the two companions testified that it was only a "slow lope" that they were traveling as they passed over the railroad track, but their speed when they left the garage, and when last seen just before entering upon the railroad track, was not so qualified, and it was testified to by other witnesses than decedent's companions.

It is true that the court gave an instruction exonerating defendant from liability if decedent was guilty of contributory negligence, and its answer relying on that defense was also couched in such general language; but it is the universal rule in this jurisdiction that under a general charge of negligence any specific act of negligence may be proven, and may likewise be submitted to the jury. In this case defendant confined itself, in the production of its testimony to establish its general plea of contributory negligence, solely to proving (c) the careless and reckless speed with which the animal was ridden by the decedent, and (d) to its physical feeble condition as a result of its age. We therefore conclude that such defenses should have been submitted to the jury by the instructions offered by defendant, or others embodying the same idea, and that the court erred in declining to do so. All other questions not herein dealt with are reserved.

Wherefore the judgment is reversed, with directions to set it aside and to sustain the motion for a new trial, and for proceedings consistent herewith.