# Cincinnati, N. O. & T. P. Ry. Co. v. Terry.

(Decided March 12, 1937.)

TYE, SILER, GILLIS & SILER for appellant.

R. L. POPE and W. H. CAYLOR for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

This is an appeal from a judgment by which appellee was awarded damages in the sum of $500 conforming to a verdict of a jury which found her alleged injury due to negligence of appellant.

As her cause of action appellee charged that appellant in the operation of its railroad through McCreary county, maintained a public crossing over its tracks just south of its depot grounds at Greenwood, and that on September 28, 1934, while walking over said public crossing, using ordinary care for her own safety, her foot caught on a rail or plank in defendant's tracks and siding, causing her to stumble and fall with great force, injuring her in a manner described, causing great physical pain and mental suffering. She alleges gross carelessness on the part of appellant, its agents and servants, in maintaining the crossing in a dangerous and defective condition. For her claimed injury she sought to recover of appellant the sum of $2,975.

The appellant filed no demurrer to the petition. By answer it first denied the allegations thereof and affirmatively pleaded contributory negligence on the part of appellee. The affirmative plea was controverted by reply. Thus the issue was joined; the case went to proof and after instructions by the court, the jury found as above stated.

The crossing admittedly maintained by appellant as a public one had been so maintained for many years. No one seems to fix the length of time. As best we can gather from a description by witnesses, the crossing proper was 30 feet in length from end to end, and was of such width as would accommodate four railroad tracks of the ordinary gauge; one a northbound main, another the southbound main, and two others, sidings or spurs. The crossing construction was of steel rails laid lengthwise; between these there was a ballast of crushed rock. In or near the center of each of the main-line tracks there ran lengthwise with the rails timbers two inches in thickness and about 4 or 6 inches in width, set edgewise, and placed there to form a conduit or to act as insulators for the electric signal wires, preventing short circuits. These boards were supposed to be so constructed as to allow their top surfaces to be on a level with the rails, and with other components of the crossing.

The appellee, about 51 years of age, left her home on the morning of September 28, 1934, for the purpose of visiting friends and doing some shopping at Greenwood. Some time in the afternoon, she and her sister-in-law started over the crossing together "just as close as women could walk, right in the middle." As appellee got to, near, or past the middle, her foot hung, and in attempting to get it loose she fell on the crossing, the result of which fall, according to her version, was to bruise her body and cause her considerable injury.

Her companion testifies that at the time appellee fell she was a step or so ahead of her in the middle of the crossing; that she saw the raised edge of the board or plank and stepped over it. Thinking she heard a train whistle, she turned her head, and when she looked back appellee was on the ground. Describing the crossing, she said:

"It was made of iron rails and wood pieces, look-

ed to be a two-four or a two by six, a couple of inches broad, and it had worked up in the track here, and it had an end connection, and where she fell looked to be a two by six. It was any way three if not four inches high. The end of the plank looked like it was run off, frazzled looking, like it had been run in the cars; like the car had crooked it up, frazzled end.''

Owen Lewis, who lived near Greenwood, said that he went over the crossing frequently; he had gone over just a few moments before Mrs. Terry fell; had seen a rail or plank between, and standing up above the rails. He does not identify it as the one which it is claimed caused appellee to stumble. He also said his mule had hung his foot on a board several times.

Emma Clark knew the crossing; she had been over it in July, and said, ''the plank was sticking up. I hit the plank myself.'' She fell there once, but does not say when, nor is there much in her evidence or in the evidence of others, who at various times saw the board, which would identify it as the one which appellee claimed to have fallen over.

The foregoing is substantially the evidence introduced by appellee, save and except such as related to her injuries and the extent thereof, which was shown by her own testimony, and that of her friends and neighbors, and the physician who attended her. It is not necessary to recount this testimony, as there is no complaint of excessive damages.

At the close of the testimony on behalf of appellee the appellant moved the court for a peremptory instruction on the ground that under the pleading, and because of insufficient proof, it was entitled to such ruling. The court overruled the motion over objection and exception by appellant.

Appellant introduced its section foreman, who testified that the wooden pieces were put in the main-line tracks as insulators, to prevent short circuiting the block system. He walked over this crossing twice daily going and coming from his work. He also rode the track on handcars almost every day. He never noticed a plank or board sticking up, and had never had any complaints about the condition of the crossing or of the plank being up or out of place. After getting a

notice of appellee's injury, he made an inspection and found a board sticking up from one-half to three-quarters of an inch, but this was at the north end of the crossing and not in the middle. He thought the "work of the track had worked it up." He had no knowledge or information that there was anything wrong with the board, or that it stuck up. The boards were nailed to the ties, and the "heavy trains caused the ties to move a little sometimes; the board could have worked up during the day."

A merchant at Greenwood, who delivered groceries in his truck, went over the crossing on an average of once or twice every day. He never noticed anything wrong with the crossing; had never noticed a board sticking up, or any obstruction in the crossing, nor had he ever heard any complaints of any defect.

Mrs. Wilson and her husband, who lived about 100 feet from the crossing and used it daily, testified that they had never noticed any plank or board sticking up or any other defect or obstruction. However, from conclusions which we have reached after a survey of the entire record, we do not deem it essential to go into further details of the evidence.

Appellant is here urging that it was entitled to a peremptory instruction, because (1) the petition does not state a cause of action; (2) the proof was insufficient to carry the case to the jury; and (3) the court committed error in both the giving of and refusal to give certain instructions.

Instruction No. 1 as given by the court did not correctly fix the liability of the appellant, nor present the defense to which it was entitled. The jury was told that it was the duty of the appellant "to use ordinary care to construct, keep and maintain said public road crossing in a reasonably safe condition for the use of the traveling public, including persons traveling on foot, who might wish to travel the public highway over said crossing." This was a good instruction as far as it went. We see little merit in appellant's contention that under section 768, Ky. Stats., the railroad was under the duty to maintain its crossing only for the safe passage of teams. This contention seems to have been adversely determined in Louisville & N. R. R. Co. v. Jackson's Adm'r, 243 Ky. 59, 47 S. W. (2d) 941.

The instruction was given substantially as above recited, over the objection of appellant. Notwithstanding counsel's statement that "appellant offered no instructions on the issues, except its motion for a peremptory," it is shown by the bill of exceptions that it did offer the following:

"And you further believe from the evidence that none of the employees of the defendant whose duty it was to maintain said crossing knew or by the exercise of ordinary care should have known, that said plank was in that condition in time to have remedied such condition before the plaintiff caught her foot on it, you will find for the defendant."

We approved an instruction defining the duty and fixing the liability of a railroad for a failure to properly maintain crossings in Wickliffe v. Moring, 113 Ky. 597, 68 S. W. 641, 24 Ky. Law Rep. 419.

Without discussing the given or refused instructions as to formality, it is sufficient for the purpose in this case to say that the one given by the court over objection was faulty in that it did not present to the jury the question as to whether the appellant knew, or by the exercise of ordinary care could have known, of the alleged defect, and in such time as would have allowed its repair by those charged with maintenance. City of Louisville v. Webber, 254 Ky. 766, 72 S. W. (2d) 470.

In the case of Louisville & N. R. Co. v. Wright, 199 Ky. 422, 251 S. W. 188, we held:

"It is the duty of a railroad company to maintain its crossings, where the public or its own employees use the same, in reasonably safe condition for travel, and the failure to do so is negligence; but the negligence grows out of the failure to maintain the crossing in reasonably safe repair for travel after the defendant has notice thereof, or after the defect has existed for such a time that it will be presumed to have had such notice."

Hereunder appellee's proof of the alleged obstruction, over which she claims to have stumbled was not shown to have existed for any period of time prior to her fall. It is true the witnesses say they saw a plank or board sticking up at various times prior to her

accident; one witness states on the day of the accident. None of these witnesses undertake to identify the obstruction at the point where witness fell.

On the other hand, witnesses (including the sister-in-law) who had traveled over the crossing on previous days say that they had not theretofore noticed any such obstruction. A witness who was charged with observation and correctional duty had walked over this track almost daily and had never observed any defect. He does say that after the accident he went to the crossing and found a defect, but it was not at or near the point where appellee says she fell. The testimony of those witnesses who claim to have seen an obstruction at various previous times is of little value, since, as we have pointed out, it may not have had the remotest connection with the one of which complaint is made.

It is the law that parties are entitled to have their respective theories, if the facts justify, submitted to the jury. Louisville & N. R. R. Co. v. King's Adm'r, 131 Ky. 347, 115 S. W. 796. We had the question presented to us in a different form in the case of Louisville & N. R. R. Co. v. Jackson's Adm'r, 243 Ky. 59, 47 S. W. (2d) 941, 943, 944. There the decedent met his death by the falling of a horse which he was riding at the time; the falling charged to have been caused by defects in a public crossing over the railroad's track. In reversing the judgment therein we held the rule to be that "In the absence of undisputed evidence of actual or presumptive knowledge, defendant is only required, under the common law or by the statutes, to exercise ordinary care to maintain the highway across its tracks to the requisite standard, and is not an insurer of such maintenance. A contrary holding would make it responsible for all obstructions and defects howsoever suddenly created, and regardless of any fault or dereliction on its part. A sudden freshet, or a recently created defect by heavy traffic, or by other impediment to safe travel, though produced by a cause for which the company was not blamable, would render it liable even without its knowledge or an opportunity to repair. We are convinced that it was not the purpose of the common-law rule to impose any such liability, and we entertain an equally confirmed opinion that the statute went no further and which as we have seen, was the holding of this court in the O'Nan opinion.

We therefore conclude that the court erred in omitting from instruction No. 1 such measurement of defendant's duty.'' See, also, City of Louisville v. Webber, supra.

We are of the opinion that the court erred in giving instruction No. 1 as given, and in refusing to present in proper form the measurement of the appellant's liability as suggested in offered instruction B.

For the reason indicated, the judgment is reversed, with directions to grant appellant a new trial consistent with this opinion. All other questions discussed are expressly reserved.

Judgment reversed.