# McNeal v. City of Louisville.

May 20, 1941.

Woodward, Dawson & Hobson and James T. Robertson for appellant.

Gavin H. Cochran and H. O. Williams for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellant, who was the plaintiff below, brought this action in the Jefferson circuit court against the city of Louisville seeking to recover damages for injuries she sustained resulting from her falling on the street.

Plaintiff alleged in her petition, in substance, that on or about the 23rd day of January, 1939, at about 11 p. m. while she was starting to cross Broadway at Third Street in the city of Louisville, and walking in the west crosswalk of that intersection, she stumbled and fell over a defect in the crosswalk, which defect had existed for a long time and defendant's officers and agents knew, or by the exercise of ordinary care could have known of the defect; that the defect was open, unguarded and a dangerous hole and a raised place and unsafe for pedestrians, and defendant was negligent in failing to keep the crosswalk in safe and proper repair, and negligent in the plan of having an open unguarded, deep and dangerous drain or catch basis in said crosswalk leaving a dangerous hole therein; that defendant was negligent in constructing and maintaining said drain or catch basin and failed to keep or construct it in safe and proper repair or condition, all of which caused plaintiff to fall and

be thrown on the street, resulting in the injuries complained of. She then described the nature of her injuries and prayed to recover of defendant the sum of $10,000, plus $550 for doctors' bills, hospital bills, medicine, nursing service and other expenses incurred.

Defendant filed its answer denying the allegations of the petition and pleaded contributory negligence. Thereafter defendant filed its amended and supplemental answer in which it alleged that the catch basin or drain referred to in the petition was constructed in accordance with plans and specifications adopted and approved by the city of Louisville pursuant to the exercise of its governmental discretion, and at the time of plaintiff's accident said catch basin was in substantially the same condition in which it had been originally planned and constructed. Later plaintiff filed her amended petition in which she alleged that defendant's negligence consisted in having a dangerous drain or catch basin located within the lines of the crosswalk, or in negligently indicating a crosswalk by chalk or white marked lines and otherwise over the drain or catch basin instead of locating the crosswalk adjacent to the drain or catch basin.

Upon the issues thus made a jury was empaneled and at the close of the evidence for plaintiff the court peremptorily instructed the jury to find a verdict for the defendant and from the judgment entered dismissing plaintiff's petition plaintiff has prosecuted this appeal. The sole question presented is the sufficiency of the evidence to take the case to the jury.

On direct examination plaintiff's counsel asked her to tell the jury in her own words where and when she was injured and the circumstances, and plaintiff answered:

"Well, during the month of January, my husband and I went to a movie at the Brown Theatre. We came out and started East on Bradway; stopped at the corner of Third and Broadway—stopped there for a red light.

"Q. About what time was it? A. I would say about eleven, eleven thirty, something like that—a double feature.

"Q. At night? A. That is right. As I

started across the street, I caught my heel in this catch basin.

"Q. A little louder? A. I caught my heel in the catch basin, that threw me, and I just fell flat on the street. * * *

"Q. Did you start to cross in the middle of the block or where? A. I started to cross in those white lines—within the white lines.

"Q. Where in the intersection? A. The crossing.

"Q. At the intersection? A. That is right."

The rest of plaintiff's evidence relates chiefly to the nature of her injuries and the expenses incurred for doctors' bills, etc., but since that phase of the case is not in issue in this appeal it becomes unnecessary for us to discuss it. On cross-examination plaintiff testified as follows:

"Q. That part of Broadway is what is popularly known and called the 'Great White Way'? In other words, there are those standards—light standards on the street at frequent intervals, each with a bright light on them. They were all burning that night, were they not? A. I could not say, really, because I did not notice. I mean, it was just another night to me, and not paying any particular attention to anything.

"Q. It is true that Third and Broadway is, and was on the night of your accident, about as well lighted as any street in downtown Louisville, isn't that true? A. Well, I suppose so.

"Q. Were you wearing high heel shoes that night? A. I think so—yes, sir.

"Q. I don't understand you to claim that there was anything wrong with the catch basin or grating? That is true, is it not? A. I did not notice anything wrong, other than being in the wrong place. I mean, it is inside of the white line, is it not?

"Q. You think it would have been better if they had placed it differently, or placed the white line differently, but so far as the basin itself was concerned, you are not complaining of anything be-

ing out of repair or improperly constructed or anything of that sort? A. That is right, I am not. It looked perfectly all right to me."

We have seen from plaintiff's amended petition and her own testimony that the sole alleged negligence relied on consists in the fact that the catch basin in question was included within or between the white lines indicating the crossway for pedestrians. Since plaintiff admits that here was nothing wrong with the catch basin in the manner of its construction, maintenance or otherwise, but relies solely upon the fact that the grate bars or coverings were of such space or opening as to admit the insertion of her shoe heel, which she says were "high heels," commonly known to be more or less pointed or narrow at the bottom, the sole question is whether or not the construction and maintenance of catch basins with such coverings constitute an unsafe or dangerous condition in the meaning of that term as applied to streets, sidewalks and other public passways of a municipality.

In City of Louisville v. Moore, 267 Ky. 536, 102 S. W. (2d) 989, 990, Moore sued the city claiming that due to a defect in the grating of a catch basin upon which he stepped, he was caused to fall and injure himself. In describing the accident he said he stepped off the curbing and his heel went through the catch basin and snatched his shoe off his foot and threw him on his face in the street. He said he did not notice the catch basin when he stepped off the curb, and had never noticed it before, but after he came from the doctor's office he went back and looked at the catch basin and found that it was "rusted, warped and spread." He said he had lived in the neighborhood for sometime and up to the date of the accident he had caught the street car at the same corner every morning but that he had never noticed the catch basin nor had he noticed anything wrong with it. An employee of the city testified that the bars of the catch basin were warped but not "badly warped." After stating that the chief question was whether or not Moore had shown by proof any act of negligence which would render the city liable for his alleged injury, the court said:

"It will be seen from the foregoing evidence as to the condition of the grating, and, as to its being safe or otherwise, there was no such proven defect

in the grating or its bars, at least at the point indicated by appellee, as would justify the conclusion that there was sufficiently shown proximate cause. As we view appellee's contention, it almost narrowed to the argument that, since he caught his heel somewhere in the grating, negligence was thereby attributed on the city. He must show more than that. This is not a case where the doctrine of res ipsa loquitur is applicable. Thomas v. National Concrete Construction Company, 166 Ky. 512, 179 S. W. 439; Fehr Brewing Company v. Corley, 265 Ky. 308, 96 S. W. (2d) 860, and cases cited.

"No matter whether the case here was based on negligence of the city in improperly constructing the basin, or in permitting it to become and remain in such a condition as to be dangerous to travelers, it devolved upon appellee to show that the method of construction was unsafe or that the permitted condition was dangerous. City of Pikeville v. Williams, 213 Ky. 52, 53, 280 S. W. 467. It is well settled that a city is not a guarantor or insurer of the safety of pedestrians. The city is only bound to use reasonable care in making the sidewalk or street safe and convenient for travel. It is under no obligation to provide for everything that may happen upon them, but only for such things as ordinarily exist or such as may be reasonably expected to occur to the users thereof when in the exercise of ordinary care for their own safety. City of Pikeville v. Williams, supra; City of Dayton v. Fox, 254 Ky. 51, 70 S. W. (2d) 961; City of Bowling Green v. Ford, 263 Ky. 523, 92 S. W. (2d) 744."

Moore was successful in the lower court but on appeal this court reversed the judgment, holding that the court below should have sustained the motion for a directed verdict at the conclusion of Moore's testimony.

Also, in McCourt v. City of Covington, 143 Ky. 484, 136 S. W. 910, it was held that when the city authorities adopt a plan for the construction of catch basins and the coverings thereof, which is not inherently dangerous, and maintain them in a reasonably safe condition, they have discharged their duty to the traveling public.

It is commonly known that many accidents arise out of or result from conditions not considered by rea-

sonably prudent minded people to be dangerous or unsafe, and hence the law does not make a city an insurer of its streets and other passways but holds it responsible only for such conditions as may reasonably appear to be unsafe to the users thereof when in the exercise of ordinary, care for their own safety.

We conclude, therefore, that the mere fact that plaintiff's shoe heel caught in the catch basin is no evidence of negligent construction or negligent maintenance of the catch basin in question and that the court did not err in peremptorily instructing the jury to find a verdict for defendant. These conclusions make it unnecessary to discuss other questions raised.

Judgment affirmed.