## City Of Hazard v. Scruggs.

May 21, 1948.

W. E. Faulkner for appellant.

S. M. Ward and Don A. Ward for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

The City of Hazard owns and operates its own

water plant. In extending its water lines to the village of Lothair, an unincorporated community just outside the city limits of Hazard, appellant, City of Hazard, had dug a ditch along the south side of Highway 15 through the town of Lothair for the purpose of laying this extended line. Appellee claims to have fallen in this ditch, thereby causing her injuries and disabilities for which she sought compensation by this action. She obtained judgment in the amount of $1,500 against the City, from which the City prosecutes this appeal.

Appellant first contends that it was entitled to a peremptory instruction by reason of the fact that appellee was guilty of contributory negligence as a matter of law. In substance the facts are these. In constructing this ditch for the laying of pipelines breaks were made in the ditch. Excavation would be made up to an intersecting or side street leading off from the highway and that portion crossing the street would be skipped and left unexcavated in order that vehicles might travel the side street.

On the night the accident was alleged to have happened, plaintiff below, Leona Scruggs, in company with others, journeyed to church in an automobile. The church was reached by a side street leading from Highway 15. In constructing the ditch this side street had been skipped thus enabling vehicles to leave the highway. The automobile in which plaintiff below was riding turned off of Highway 15 and was driven down this street leading to the church. The church services broke somewhere about 9 or 9:30 o'clock. Appellee left the church afoot, and according to her testimony was going to Abrahm Adams' house which was situated facing the highway and on the side on which the ditch had been dug. When she reached the highway she turned to her left and fell into the ditch thereby injuring herself. It appears this ditch was dug alongside the highway about 18″ from the pavement and where there had been a gravel walkway on which people were accustomed to walk.

Numerous witnesses testified that there were no lights or flares of any kind to warn that the ditch was there. This, however, was denied by witnesses for the City.

Mr. Spaulding, City Manager, stated: "We must have had 8 or 10 lights that were strung out at intervals of 200 or 250 feet along up and down the ditch." While he did not have in charge the actual lighting of these lights he did state that on possibly two occasions he had gotten out of his car and relighted lights that had gone out from one cause or another.

Willie Allen, who attended to the lights along the ditch on the day the accident occurred, stated that he put the lights along the ditch before dark, and that he filled them with new oil and left them all burning.

J. J. Moran, Mayor of Hazard, stated that he visited the place where the pipeline was being laid 15 or 18 times during the progress of the work, mostly at night, and that the signal flares were always burning along the ditch line when he was there. He said he did not remember whether he drove along the ditch on this Sunday night the plaintiff claims to have been injured.

Thus we see there is a conflict in the testimony. That there was sufficient evidence to take the case to the jury is obvious, but appellant insists that appellee was contributorily negligent as a matter of law, and thus despite the conflict in testimony a peremptory instruction should have been given. In support of its position a number of cases are cited some of which are foreign. It would appear from the reading of these foreign cases that some courts have taken a rather extreme view in situations parallel to this. The domestic cases cited are not in point here.

Appellant attempts to liken the conduct of the appellee to that of a person walking into a dark room. That is not the case here. She had been to church where she had a right to go. After church she was going to a neighbor's house where she had a right to go. She was a pedestrian on the highway. The City had the right to dig the ditch and extend its lines but it also was impressed with the duty of protecting the public. It was its duty to use ordinary care not to render the highway or the street unsafe or dangerous by excavation of the ditch, and it was its duty to place warning signals along this ditch sufficient to warn pedestrians. If the City failed to maintain lights so to warn pedestrians then there was negligence, and that negligence

was the proximate cause of the accident which caused appellee's injury. See City of Carlisle v. Campbell, 151 Ky. 279, 151 S. W. 673.

Appellant seems to take the position that appellee was just wandering around in the dark with nowhere to go, and since she was so doing she was negligent as a matter of law. In the case of City of Glasgow v. Gillenwaters, 113 Ky. 140, 67 S. W. 381, 382, we said:

"* * * There was evidence sufficient to support the finding of the jury that there was no light nor other warning at the point where this wire was placed. Such a wire of itself was a very dangerous obstruction, constituting a nuisance, and should not have been allowed by the city.

"Appellant asked the court to instruct the jury that if appellee unnecessarily left the sidewalk, which was safe, and, without good or sufficient reason, walked or ran into the wire across the street, and was injured, they must find for the defendant. This instruction was refused, and the refusal is made the basis of a complaint upon this appeal. It was said in the case of City of Lexington v. Auger, 4 Ky. Law Rep. 24: 'It is true, there was ample room on the sidewalk for the traveler, and he would have to make a diversion from the main path to reach the danger; still he had the right to use any part of the street for the purpose of traveling.' City of Olathe v. Mizee, 48 Kan. 435, 29 P. 754, 30 Am. St. Rep. 308. In the last-named case it was said: 'A divergence or departure from the crosswalks is not an evidence of want of care. Pedestrians have a right to cross a street at any point, and it is a common practice to do so.' In Brusso v. City of Buffalo, 90 N. Y. 679, it was held: 'A person desiring to cross the street, either in the nighttime or in the daytime, is not confined to a crossing. He has a right to assume that all parts of the street intended for travel are reasonably safe; and if in the nighttime he desires to cross from one side to the other, and knows of no dangerous excavations in the street, or other obstructions, he may cross at any point that suits his convenience, without being liable to imputation of negligence.' This doctrine seems to be abundantly sustained and inherently sound. The instruction was properly refused."

We conclude, therefore, that the court properly refused to find appellee contributorily negligent as a matter of law and refused the peremptory instruction.

Appellant next contends that the presence of the ditch whether guarded or unguarded was not the proximate cause of plaintiff's injury. In support of its position a number of cases are cited, most of which have to do with intervening causes and none of which are applicable to the facts of this case. The City excavated the ditch. If appellee's testimony was correct appellant failed to maintain lights or flares and because of such failure appellee had no warning that the ditch was there. There is no evidence of any intervening cause. This contention of appellant is without merit.

Some little complaint is made about the excessiveness of the verdict. According to the testimony considerable time was spent in the hospital. Hospital and doctor bills amounted to $400 or $500. We are not impressed with this contention.

Wherefore, the judgment is affirmed.