**LOUISVILLE & NASHVILLE RAILROAD CO. et al., Appellants,**

v.

**Jeanette W. TAYLOR, Appellee.**

Court of Appeals of Kentucky.

March 23, 1956.

Rehearing Denied June 15, 1956.

H. G. Breetz, Louisville, C. S. Landrum, Lexington, J. P. Helm, Jr., Norris W. Reigler, Louisville, for appellants.

Morris & Garlove, Louisville, for appellee.

STANLEY, Commissioner.

The appellee, Mrs. Jeanette W. Taylor, recovered a judgment for $4,402.48 for personal injuries and special damages against the appellants, Louisville and Nashville Railroad Company and City of Louisville.

Frankfort Avenue is a heavily traveled east and west thoroughfare. A double track railroad crosses the avenue diagonally, forming an "X". The concrete sidewalks terminate at the railroad right of way but the asphalt or "blacktop" street paving widens and extends over the street where the sidewalks would be were they

projected across the railroad right of way. The tracks and the street paving are on an even surface. Between the two tracks, on the railroad right of way, just off the paved surface of the street, was a drainage ditch and catch basin or pit at the end of a small culvert through which the surface water flowed under the street. Its side began at the edge of the asphalt paving and sloped to a depth of about two feet. There is no claim that the condition was unsafe in any respect except the proximity of the catch basin or pit to the walkway.

The accident occurred about half past five o'clock on a misty evening in December, 1953. One of the grounds of negligence relied upon is that the defendants had maintained this crossing without adequate lighting. While there are no street lights closer than about 150 feet, the crossing was reasonably lighted from nearby store windows and many passing automobiles. The plaintiff testified it was dark. She admitted automobile lights illuminated the street but not the sides or where the hole was.

The plaintiff was not a stranger to the situation. She says, however, that she had only walked along there on two previous occasions, both during daylight. The last time was about three weeks before the accident. She knew the sidewalks ended at the right of way but had not paid any attention to the conditions off the paving. On this occasion she was walking along "normally" looking ahead and not looking down to see where she put her foot. She stepped off the paving into the depression and broke her ankle and suffered other injury.

■■■■ We perceive no negligence on the part of either defendant.

The railroad company paved and maintained the street where it crossed the railroad right of way, presumably upon plans approved by the city. KRS 277.060 (2, 3). As stated, the drainage pit was on the railroad right of way between the tracks, although its rim was at the edge of the asphalt paving. The company had spread the paving 18 inches beyond the street right of way onto its own right of way. The company, in substitution of the city, was required to construct and maintain the street in such a way as to make it reasonably safe for travelers. This, of course, included pedestrians exercising ordinary care for their own safety. Louisville & N. R. Co. v. Jackson's Adm'r, 243 Ky. 59, 47 S.W.2d 941; Chesapeake & O. R. Co. v. Pope, 296 Ky. 254, 176 S.W.2d 876. The condition or plan was not dangerous or unsafe.

■■■ We agree with the appellee that a pedestrian has the right to travel upon any part of a street and has the right to assume the way is reasonably safe where pedestrians may be expected to go. City of Glasgow v. Gillenwaters, 113 Ky. 140, 67 S.W. 381; City of Hazard v. Scruggs, 307 Ky. 516, 211 S.W.2d 683. The case of Savage v. City of Louisville Gas & Electric Co., Ky., 267 S.W.2d 948, relied upon by the appellee, confirms this principle but it is distinguishable upon the facts. In that case the company had dug and left unguarded a deep hole within the limits of a sidewalk area just outside the plaintiff's yard gate. The woman who fell into the hole had the right to walk there without anticipating or expecting such a dangerous pitfall. That was a temporary, unusual condition which had been created a short while before the accident and was unknown to her. In this case the pedestrian inadvertently veered from her course and left a safe place where she was expected to walk and stepped into a reasonable and apparently necesesary, permanent drainage catch basin between the railroad tracks. It was like stepping off the curb of a sidewalk into the street gutter.

In McNeal v. City of Louisville, 287 Ky. 83, 151 S.W.2d 749, a woman in a marked crosswalk at a street intersection caught the heel of her shoe in a grating of a catch basin and fell. We held the mere fact that the plaintiff had caught her heel in the grating did not show negligent construction or maintenance and affirmed the giving of a peremptory instruction for the city in an action for damages.

The case of Town of Elsmere v. Tanner, 158 Ky. 681, 166 S.W. 220, 221, is much like the case at bar. The sidewalk was four inches above the ground, which slanted downward two or three feet to the street level. A lady stepped off the paving, lost her balance and fell down the embankment. In the course of the opinion holding that there was no negligence on the part of the city, we said: "It is at once apparent that the sidewalk was not built in a dangerous or unsafe place. The surroundings were not calculated to make it any more hazardous than ordinary sidewalks." After commenting upon the fact that sidewalks are everywhere built upon elevations with sloping sides and without protective barriers, we noted the similarity to sidewalks alongside "surface sewers" or gutters, and observed "it would hardly be contended that, if a person walking on a sidewalk, with a surface sewer beside it, should walk too close to the edge of the sidewalk and make a misstep that would cause him to lose his balance and fall into the sewer, he could recover damages on the ground that the city had not exercised ordinary care to keep its sidewalks in good repair." We held there was no "reasonable ground for difference of opinion concerning the proposition that the city exercised ordinary care to keep the sidewalk in reasonably safe condition for travel. This being the measure of its duty, it is not liable for the accident that happened to Mrs. Tanner, and the motion for a peremptory instruction should have been sustained."

▮▮ The appellee argues the city was negligent in not having the crossing lighted so pedestrians would not stray off the paving. There is no legal obligation on a municipality to light its streets or sidewalks when the construction is reasonably safe for travel in the daytime. But this, of course, does not relieve the city from the duty of exercising ordinary care required to expose defects in the street or sidewalk or temporary excavations or obstructions. McQuillen, Municipal Corporations, Sec. 54.101. As pointed out in Gee's Adm'r v. City of Hopkinsville, 154 Ky. 263, 157 S.W.

30, 31, 46 L.R.A.,N.S., 229: "Where there are no defects or unsafe places in the streets, and they are in a reasonably safe condition for public travel, the city has a broad discretion as to the number and character of lights that it will establish, and cannot be made liable in damages for the failure to furnish such number and quality of lights as would better illuminate the streets than those provided." See also Duley v. Town of Smithland, 174 Ky. 248, 192 S.W. 21; Pugh v. City of Catlettsburg, 214 Ky. 312, 283 S.W. 89, 46 A.L.R. 939.

In the Tanner case, the city maintained no street light at the place of the accident, but the moon was shining and the white surface of the concrete pavement in contrast to the grass and ground on the side afforded sufficient visibility. In the present case the plaintiff's own testimony shows that this railroad crossing was illuminated by lights of passing automobiles. In addition, there is abundant evidence which is substantially uncontradicted that lights from nearby store windows shone upon the crossing.

It seems to us there was no showing of negligence on the part of the railroad company or the City of Louisville and that a peremptory instruction to find for the defendant should have been given.

▮▮ Both defendants seasonably filed motions for a judgment notwithstanding the verdict based upon the failure of the court to grant their respective motions for a directed verdict made at the close of all the evidence. CR 50.02. The motions were overruled as was a joint motion for a new trial. Under CR 50.02 and 50.03 it is within this court's discretion upon reversing a judgment whether or not to direct a judgment notwithstanding the verdict rather than to direct a new trial. Coca Cola Bottling Works of Lexington v. Bingham, Ky., 277 S.W.2d 468. It appears that all the facts in this case were fully developed. We see no reason, therefore, for having another trial where the circuit court will have to direct a verdict for the defendants under this opinion.

Accordingly, the judgment is reversed with directions that it be set aside and that judgment be entered for the defendants.

Judgment reversed.