**Mary Ruth SPARKS, Plaintiff,**

v.

**WESTERN UNION TELEGRAPH COMPANY, Defendant.**

**Civ. No. 2806.**

United States District Court
W. D. Kentucky, at Louisville.
June 1, 1956.

329

S. J. Stallings, Robert P. Hobson, Louisville, Ky., for plaintiff.

R. Lee Blackwell, Bullitt, Dawson & Tarrant, Louisville, Ky., for defendant.

BROOKS, District Judge.

This action is submitted on the motion of the defendant, Western Union Telegraph Company, to set aside a jury verdict for the plaintiff, Mary Ruth Sparks, and to enter judgment in accordance with defendant's motion for a directed verdict.

The facts surrounding the accident in which the plaintiff was injured are not disputed. The plaintiff was crossing Market Street at the intersection of Fourth and Market Streets in Louisville, Kentucky, in a designated crosswalk when she stepped on a manhole cover maintained by the defendant. The manhole cover which was located approximately in the middle of the crosswalk was 27 inches in diameter and there were four holes of one inch in diameter in its cover. Plaintiff's heel, which was approximately ⅞ of an inch in diameter, went into one of these holes causing her to fall, resulting in the injuries for which she obtained her verdict.

The defendant introduced evidence to show that there are over 5,523 manhole covers maintained in the City of Louisville and that there are many catch basins, cellar doors and coal holes with openings as large or larger than the one inch holes in the Western Union manhole cover in question. It was argued that a reasonable man would not have anticipated the danger inherent in manhole covers with holes in them, since manhole covers are in such common use that a person is held to know and appreciate their potential danger and that no property owner should be held to anticipate

that any injury will ever occur by reason of the existence of such a commonplace condition.

Strong reliance is placed upon what the defendant designates as the "common use" doctrine as applied in the case of Greater Louisville First Federal Savings & Loan Association v. Stone, Ky.1951, 242 S.W.2d 739, 741. In this case a child 15 months old was burned by a hot exposed radiator pipe in a building into which he had accompanied his mother. In reversing a jury verdict for the plaintiff the Court said:

"In the instant case, an uncovered radiator pipe is a thing in common use. It is a matter of common knowledge that uninsulated radiator pipes exist everywhere. There is no difference in principle between an exposed radiator pipe and an unguarded hot coal stove. Formerly, coal stoves were in general use and are still to be found in most rural homes and in many small town business places. A hot object is not inherently attractive to children and is dangerous only when contact is made with it. No one would assume, or even argue, that a country merchant would be liable to a child that came into his store and received a burn by touching a red hot stove. With reference to radiators, and likewise with hot stoves, the practice of not covering or guarding them is so usual and widespread that no property owner should be held to anticipate that any injury would ever occur by reason of the existence of such a commonplace condition.

"We cannot read into this case positive, active negligence upon the part of appellant. The care taken by people generally to prevent injury from instruments of common use is the proper criterion for courts to consider in determining what constitutes due care with respect to the use of such instruments. An uncovered radiator pipe is an instrument in common use, and it is a standard, approved practice to leave radiator pipes exposed. Therefore, having and keeping radiator pipes uncovered in a building, is not a negligent act upon the part of the possessor of property."

■ There is no doubt that manhole covers, like uncovered radiator pipes and unguarded hot stoves are things in common use. And if the fact of common usage alone made the "common use" doctrine applicable, there would have been no factual issue to present to the jury in this case. However, for the doctrine of Greater Louisville to apply, it must be shown first, that the public knows or in the exercise of ordinary care should know that manhole covers like hot water pipes and hot stoves are dangerous when contact is made with them. And secondly, that the practice of not guarding manhole covers "is so unusual and widespread that no property owner should be held to anticipate that any injury would ever occur by reason of the existence of such a commonplace condition."

■ Obviously it is a matter of common knowledge that hot objects such as exposed hot radiator pipes and unguarded hot coal stoves will burn a person who touches them. However, it cannot be said from the evidence in this case that it is a matter of common knowledge that stepping on a manhole cover is inherently dangerous and will result in injuries. The evidence disclosed that manhole covers are of many different designs, particularly as to the number and size of holes that are in them. Some manhole covers have a substantial number of holes in their tops that cause the covers and their injury causing potential to be easily noticed by a pedestrian exercising ordinary care for his own safety. Such manhole covers with a substantial portion of their area covered with holes creates a situation comparable to a sidewalk grill discussed in the case of McQuillan v. City of New Orleans, La.App.1944, 18 So.2d 218, where the Court directed a verdict for the defendant. The situation is also comparable to the catch basin case, City

of Louisville v. Moore, 1937, 267 Ky. 536, 102 S.W.2d 989, wherein the catch basin was described as being 30¾ inches long by 22⅕ inches wide with a grating consisting of cast iron bars running crosswise of the width, the distance between the bars being ¾ of an inch, and the defendant received a directed verdict as was also awarded in McNeal v. City of Louisville, 1941, 287 Ky. 83, 151 S.W.2d 749.

However, there are manhole covers without any holes in them. Others may have a single hole in the middle of the cover or a single slanted hole in the edge of the cover to accommodate a hook to lift it. Certainly covers without holes are not dangerous, nor are covers that have such small holes that a heel could not enter them. Clearly, the danger area of a manhole cover is proportionate to the number and size of holes in it. It also must not be overlooked that the particular location of manhole covers in the streets and sidewalks is extremely important in determining their potential for danger. Under these circumstances, therefore, it cannot be said as a matter of law that it is common knowledge that all manhole covers as a class, like the hot stoves and exposed hot pipes referred to in Greater Louisville are inherently dangerous to anyone coming in contact with them.

The facts in the present case are also distinguishable from Greater Louisville in the second particular referred to above because of the plaintiff's evidence that the danger of unguarded holes in manhole covers has been anticipated. In Greater Louisville witnesses for the defendant testified that it was not customary or usual to cover radiator pipes. An expert witness for the defendant testified that he had never known a case where the return pipes on radiators were required to be insulated. This same witness produced specifications at the trial covering housing projects in Louisville which provided that all return pipes to radiators should not be covered. Nowhere in the opinion is there a record of any evidence produced by the plaintiff in contradiction of the above testimony. Here plaintiff has presented evidence showing that the Louisville Gas and Electric Company, anticipating the danger in one-inch openings in manhole covers has maintained the general practice for fifteen years of placing rivets in the manhole cover openings so as to provide a cover for them, thereby reducing the danger to pedestrians. Louisville Gas and Electric Company maintains over one thousand manholes in Louisville or approximately one-fifth of the total number of manholes in the city. The defendant, Western Union, maintains approximately one hundred fifty manholes in Louisville. Plaintiff also produced testimony showing that the "modern trend" among companies maintaining manhole covers is to provide some protection for the openings in manhole covers.

It therefore cannot be said as a matter of law as said in Greater Louisville that "the practice of not covering or guarding them is so usual and widespread that no property owner should be held to anticipate that any injury would ever occur by reason of the existence of such a commonplace condition. * * * Furthermore, as Justice Holmes said in Texas & P. R. Co. v. Behymer, 189 U.S. 468, 23 S.Ct. 622, 623, 47 L.Ed. 905, "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not."

■■ For the above reasons defendant's proof of the common use of manhole covers with holes in them was insufficient to conclusively sustain its claim of immunity. Empire Oil & Refining Co. v. Hoyt, 6 Cir., 112 F.2d 356, 361. Under the particular facts of this case it was the duty of the defendant to exercise ordinary care to see that the manhole cover in question was constructed, designed and maintained in a reasonably safe condition for pedestrians using the crosswalk where plaintiff was injured. Whether defendant was negligent in this regard was a question for the jury.

332

Defendant's motion to set aside the verdict and judgment thereon and to enter judgment in accordance with its motion for a directed verdict is overruled. Defendant's motion for a new trial is likewise overruled. Counsel for plaintiff will prepare appropriate order.